[No. 14564.    Department One.    October 8, 1918.]

PERCY C. SHANSTROM, *Respondent*, v. C. R. CASE,
*Superintendent of Streets in the City of
Seattle, et al., Appellants.*[1]

MUNICIPAL CORPORATIONS — PUBLIC WORKS — OPERATING ASPHALT
PLANT—FIXING PRICE.  The city of Seattle cannot legally sell the
product of its asphalt plant without an ordinance fixing the price
at which it can be sold, in view of Seattle Charter, art. 4, § 18, subd.
12a, which provides that the city may "by ordinance and not other-
wise" operate asphalt plants and fix the price at which such ma-
terials may be sold.

MUNICIPAL CORPORATIONS—TAXPAYER'S ACTION—INJUNCTION— IL-
LEGAL SALE OF ASPHALT.  A taxpayer being presumptively damaged
by the unlawful expenditure of public moneys, may maintain an ac-
tion to enjoin the city from illegally selling the product of its as-
phalt plant without an ordinance fixing the price at which it may
be sold.

APPEAL—REVIEW—PARTIES ENTITLED.  Errors cannot be urged by
respondents without taking a cross-appeal.

Appeal from a judgment of the superior court for
King county, Dykeman, J., entered November 17, 1917,
in favor of the plaintiff, upon overruling a demurrer
to the complaint, in an action for an injunction.  Af-
firmed.

*Hugh M. Caldwell, George A. Meagher,* and *Hugh R.
Fullerton,* for appellants.

*Roberts, Wilson & Skeel,* for respondent.

TOLMAN, J.—The respondent, who is a resident tax-
payer of the city of Seattle, seeks in this action to en-
join the city of Seattle and its superintendent of streets
from selling asphalt manufactured at its municipal
plant, and from entering into any contract for such
sale, until the city has, by ordinance, fixed the price
at which such product may be sold.

[1]Reported in 175 Pac. 323.

It is alleged in the complaint that the city of Seattle is the owner of an asphalt plant erected at public expense from funds raised by general taxation, and that the plant was constructed for the purpose of equalizing prices of certain paving materials and with a view of preventing exorbitant charges being made for certain character of improvements, and for the purpose of establishing and fixing a suitable price for the product manufactured at such plant. It is further alleged that, by the city charter, subd. 12a, § 18, article 4, the . price may be fixed only by ordinance, that the product may be sold only at the plant at a price so fixed by ordinance, and that the tools, equipment, instrumentalities and agencies of the city may not be used for the purpose of entering into contracts or subcontracts for the paving of streets; that the city council has not passed any ordinance fixing the price at which such asphalt may be sold, and that the superintendent of streets, without legal authority, is presuming to sell such asphalt at prices fixed by him alone, and is entering into contracts for the laying of asphalt paving, in the performance of which he is using the products of such plant and the tools and implements of the city, and will continue so to do unless enjoined by the court.

The appellants demurred to the complaint on the ground that the facts alleged do not constitute a cause of action, which demurrer was by the trial court overruled, and the appellants refusing to plead further, a decree was entered granting the respondent substantially the relief prayed for, from which decree this appeal is prosecuted.

Can the city of Seattle legally sell the product of its asphalt plant without an ordinance fixing the price at which it shall be sold? It is alleged by the respondent and admitted by the appellants, "that said plant

was so built and constructed by the city of Seattle for the purpose of equalizing prices of paving materials and with a view of preventing exorbitant charges being made for certain character of improvements.''

The authority to construct and operate such plant is found in Rem. Code, § 8005, which provides that any incorporated city or town within the state is authorized to

"maintain and operate works, plants and facilities for the preparation and manufacture of all such stone or asphalt products or compositions or other materials which may be used in street construction or maintenance, together with the right to use the same, and also to fix the price of and to sell the same for use in the construction of municipal improvements of such city or town;"

But the statute is silent upon the question of how the city shall fix the price for the materials sold for use in the construction of municipal improvements of such city or town. It is manifest, if the plant is constructed and operated for the purpose of equalizing prices and preventing exorbitant charges, that the price at which the city proposes to sell should be known to all persons interested at all times, so that all prospective bidders upon public work may know at what price they may procure such product in the event of securing a contract.

We are not greatly impressed by the argument that the superintendent of streets could offer to sell to one bidder at one price and demand a different and higher price, or refuse to sell at all, to another bidder, because we cannot conceive of a public official who would so lose sight of his duty. Such a possibility, however, would seem to exist if the contentions of the appellants are to obtain.

The legislature having authorized the city to fix the price and having left the manner of doing so to the

city, we must turn to the city charter to ascertain if it provides a method therefor. Section 18 of article 4 of the city charter of Seattle reads:

"Sec. 18. Powers of Council: The city council shall have power by ordinance and not otherwise—  . . .

"Twelfth (a) To provide by ordinance for acquiring, opening and operating stone quarries, either within or without the city limits, and for the erection of asphalt plants and the preparation, manufacture and sale of all such stone or asphalt products or compositions or other materials which may be used in street construction or maintenance, and to fix the price at which such materials shall be sold."

This provision appears to cover the question in dispute fully and in language too clear to require construction. By the provision "by ordinance and not otherwise" the city is required and directed to fix the price at which asphalt shall be sold by ordinance, and forbidden to fix it in any other manner. If this provision be permissive only and not mandatory, as appellants contend, then it is difficult to understand why an ordinance should be required for any of the purposes mentioned in the forty odd subdivisions of the section of the charter referred to; and the mayor, or some other city official, might assume to provide for the appointment and election of officers, the assessment and levying of taxes, the acquisition of property, the borrowing of money and issuance of bonds, and the performance of other like functions, which § 18 provides shall be done by ordinance only.

The argument that the price must necessarily change from time to time because of a change in the cost of production cannot, in our judgment, prevail against the plain language of the charter.

No doubt the city may use its asphalt, under the authority of the statute heretofore quoted, to improve and repair streets, and when it carries on the work

of local improvements by days' labor. But our attention has not been called to any provision of law, statutory or charter, which authorizes the city to enter into contracts or subcontracts for the laying of asphalt, and we know of no authority for a municipality to hazard public funds gathered by taxation by entering into competition with private enterprises in the taking of contracts or subcontracts for the laying of asphalt even upon its own streets.

Some contention is made here as to the right of the respondent to maintain this action. But under *Dirks v. Collin,* 37 Wash. 620, 79 Pac. 1112, and *Miller v. Sullivan,* 32 Wash. 115, 72 Pac. 1022, we think the action was properly brought by the respondent.

Counsel for the respondent invites our attention to paragraph nine of the complaint, which alleges that the city charter provides that all local improvement work must be done under the direction and supervision of the city engineer; that, notwithstanding these provisions, the superintendent of streets has assumed to do, and has done, work in the nature of street paving, and private contracts for paving of streets, without the supervision of the city engineer. In the decree entered by the trial court, the city and its superintendent of streets is enjoined from selling asphalt until the price shall have been fixed by ordinance, and from undertaking to perform private contracts in the nature of subcontracts for contractors who have been awarded contracts for public improvements, and from doing and performing any paving or local improvement work without the same is done in accordance with the city charter and the ordinances of the city of Seattle. If this last provision means that the work must be done under the supervision of the city engineer as provided by the charter, then it has our approval, but if it means that the superintendent of streets may continue to per-

form work without the supervision and approval of the city engineer, we are powerless, in the absence of an appeal by the respondent, to pass upon the question he thus raises.

Finding no error, the judgment of the trial court will be affirmed.

MAIN, C. J., FULLERTON, PARKER, and MITCHELL, JJ., concur.