[No. 28898. *En Banc.* March 15, 1943.]

ROBERT D. MITCHELL, *Respondent,* v. CONSOLIDATED SCHOOL DISTRICT No. 201 *et al., Appellants.*[1]

[1]Reported in 135 P. (2d) 79.

62

*The Attorney General* and *John Spiller, Assistant,* for appellants.

*Frank L. Walters,* for respondent.

*Clarence J. Coleman* and *George E. Flood (Joseph E. Hurley* and *George Donworth,* of counsel), *Matthew W. Hill, Ford Q. Elvidge, J. D. Cook, Carl E. Croson, Tom W. Holman, Henry Elliott, Jr., Don F. Kizer, Arthur W. Davis, E. J. Barker, D. V. Morthland, William C. Bates,* and *L. Milton Burnett, amici curiae.*

BLAKE, J.—Plaintiff, a resident and taxpayer of consolidated school district No. 201, in Island county, brought this action under the uniform declaratory judgments act (Rem. Rev. Stat. (Sup.), §§ 784-1 to 784-15 [P. C. §§ 8108-21 to 8108-35], inclusive), praying for

judgment declaring chapter 53, Laws of 1941, p. 120 (Rem. Supp. 1941, §§ 4776a, 4776b), unconstitutional. Defendants interposed a demurrer to the amended complaint. The court overruled the demurrer, and, upon defendants' election to stand on it, entered judgment declaring chapter 53, Laws of 1941, unconstitutional and enjoining defendants from expending public funds pursuant to its terms. Defendants appeal.

The act is entitled:

"AN ACT relating to the health, welfare and safety of children attending elementary schools and high school in accordance with the laws of this state; and providing for the transportation of school children attending private or parochial schools in all cases wherein provision for transportation of children attending public schools has been made."

In § 1, the legislature declares that its intent is to exercise the police power of the state; and that the purpose of the act is to avoid and minimize the accidents and traffic hazards to which children of school age are subjected in "attending elementary schools and high schools in accordance with the laws of this state."

Section 2 of the act provides:

"Whenever any district school board shall, pursuant to any laws of the State of Washington, provide transportation for pupils attending public schools, all children attending any private or parochial school under the compulsory school attendance laws of this state shall, where said private or parochial school is along or near the route designated by said board, be entitled equally to the same rights, benefits and privileges as to transportation as are so provided for by such district school board for pupils attending public schools."

The facts set out in respondent's amended complaint, upon which he invokes the jurisdiction of the court under the declaratory judgment act, are, in substance, as follows: That, pursuant to chapter 53, Laws of 1941,

the directors of the school district are using public funds *"from the state permanent school fund and the current school fund"* (italics ours) for the transportation, in a school bus, of children eligible to attend the common public schools to and from the Christian school; that the Christian school is located in district No. 201; that it is a privately owned and operated sectarian or parochial school maintained and controlled by a church denomination or religious sect; that the religious tenets of such sect are taught as a part of the regular curriculum of the school; and that the school is not a part of the public school system of the state, nor is it under the control of the voters of the school district or their representatives, the directors.

▮▮ Preliminary to a discussion of the constitutional question presented, it may be well to observe that the demurrer admits the facts alleged in the amended complaint; that, upon the facts alleged, respondent, as a taxpayer residing in the district, has a right to maintain the action (*Dirks v. Collin,* 37 Wash. 620, 79 Pac. 1112; *Shanstrom v. Case,* 103 Wash. 672, 175 Pac. 323; *Barnett v. Lincoln,* 162 Wash. 613, 299 Pac. 392; *Sasse v. King County,* 196 Wash. 242, 82 P. (2d) 536); that the facts alleged are sufficient to invoke the jurisdiction of the court under the declaratory judgment act (*Johnson v. State,* 187 Wash. 605, 60 P. (2d) 681, 106 A. L. R. 237; *Acme Finance Co. v. Huse,* 192 Wash. 96, 73 P. (2d) 341, 114 A. L. R. 1345; *McDermott v. State,* 197 Wash. 79, 84 P. (2d) 372); and that the police power—broad and comprehensive as it is—may not be exercised in contravention of plain and unambiguous constitutional inhibitions. (2 Cooley's Constitutional Limitations (8th ed.), p. 1229; *Jacobson v. Massachusetts,* 197 U. S. 11, 25, 49 L. Ed. 643, 25 S. Ct. 358; *State ex rel. Richey v. Smith,* 42 Wash. 237,

84 Pac. 851, 5 L. R. A. (N.S.) 674; *Wright v. Hart,* 182 N. Y. 330, 75 N. E. 404, 2 L. R. A. (N.S.) 338.)

Among other constitutional inhibitions which respondent invokes against the act are Art. IX, § 2 and § 4, and Art. I, § 11. Section 2 of Art. IX provides:

"The legislature shall provide for a general and uniform system of public schools. The public school system shall include common schools, and such high schools, normal schools, and technical schools as may hereafter be established. *But the entire revenue derived from the common school fund, and the state tax for common schools, shall be exclusively applied to the support of the common schools.*" (Italics ours.)

Section 4 of Art. IX provides:

"All schools maintained or supported wholly or in part by the public funds shall be forever free from sectarian control or influence."

Among other provisions, § 11 of Art. I contains the following:

"No public money or property shall be appropriated for or applied to any religious worship, exercise, or instruction, or the support of any religious establishment."

In face of these constitutional provisions, it would seem too clear for argument that the act (chapter 53, Laws of 1941) transcends the police power of the legislature. Giving the act its fullest import, it is nothing more nor less than a mandate to the directors of public school districts in which busses are operated for the transportation of pupils to and from public schools to carry children to and from private schools.

Appellants argue that the requirement of the act does not impose any additional expense upon the school district, inasmuch as pupils in private schools are required to present themselves for transportation upon the route over which the bus is regularly oper-

ated for the transportation of pupils in public schools. It would seem sufficient answer to this argument to say that it is alleged in the amended complaint that common school funds are being used for the transportion of pupils to and from the Christian school, and that such school is a sectarian institution. The facts alleged are admitted by the demurrer.

But, aside from this, it is too apparent to be denied that, for every pupil carried, there is an additional expense to the school district. For each pupil, the cost of actual transportation may be slight. Whether the expense be small or great, is, of course, no justification for the use of common school funds for other than common school purposes. It is apparent, however, that, in the aggregate, the burden imposed on the common school fund by chapter 53, Laws of 1941, is very substantial. It was stated in argument upon the first hearing of the case in this court that there are twenty-four thousand pupils attending private and parochial schools in this state. It hardly seems debatable that merely the daily cost of transportation of such a number of pupils would be a heavy drain on the common school fund—to say nothing of the necessary investment of funds in additional equipment to provide transportation for them.

The act does not make a specific appropriation of school funds for carrying out its purpose. But, to carry out its purpose, the directors of school districts must, of necessity, resort to the common school fund. As such, they have no other resource. It is clear that the act contravenes Art. IX, § 2, of the constitution in that it necessitates the use of common school funds for other than common school purposes.

We think it equally clear that it contravenes Art. IX, § 4, and Art. I, § 11, unless it may be said that the transportation of pupils to and from the Christian

school is of no benefit to the school itself. Appellants endeavor to uphold the act upon that qualification, contending that the transportation of pupils to and from the school inures exclusively to the benefit of the pupils and their parents, in that it simply relieves them from the obligation incident to compulsory attendance statutes of providing transportation themselves. Conceding validity to the argument, it runs afoul of another constitutional inhibition: Art. VIII, § 7, which provides that "No county, city, town or other municipal corporation shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual, . . . except for the necessary support of the poor and infirm, . . ."

We cannot, however, accept the validity of the argument that transportation of pupils to and from school is not beneficial to, and in aid of, the school. Even legislation providing for transportation of pupils to and from public schools is constitutionally defensible only as the exercise of a governmental function furthering the maintenance and development of the common school system. Const. Art. IX. *Lanphier v. Tracy Consol. School Dist.*, 224 Iowa 1035, 277 N. W. 740, 118 A. L. R. 801, and annotation p. 806 *et seq.*; *Consolidated School Dist. No. 1 v. Wright*, 128 Okla. 193, 261 Pac. 953, 56 A. L. R. 152; *State ex rel. Van Straten v. Milquet*, 180 Wis. 109, 192 N. W. 392. See, also, *State ex rel. School Dist. No. 56 v. Superior Court*, 69 Wash. 189, 124 Pac. 484; *Howard v. Tacoma School Dist. No. 10*, 88 Wash. 167, 152 Pac. 1004, Ann. Cas. 1917D, 792.

The argument advanced by appellants here was met and refuted by the court in *Judd v. Board of Education*, 278 N. Y. 200, 211, 15 N. E. (2d) 576, 118 A. L. R. 789:

"The argument is advanced that furnishing transportation to the pupils of private or parochial schools

is not in aid or support of the schools within the spirit or meaning of our organic law but, rather, is in aid of their pupils. That argument is utterly without substance. Free transportation of pupils induces attendance at the school. The purpose of the transportation is to promote the interests of the private school or religious or sectarian institution that controls and directs it. 'It helps build up, strengthen and make successful the schools as organizations' [citing cases]. Without pupils there could be no school. It is illogical to say that the furnishing of transportation is not an aid to the institution while the employment of teachers and furnishing of books, accommodations and other facilities are such an aid. In the instant case, $3,350 was appropriated out of public moneys solely for the transportation of the relatively few pupils attending the specific school in question. If the cardinal rule that written constitutions are to receive uniform and unvarying interpretation and practical construction is to be followed, in view of interpretation in analogous cases, it cannot successfully be maintained that the furnishing of transportation to the private or parochial school out of public money is not in aid or support of the school."

We think the conclusion is inescapable that free transportation of pupils serves to aid and build up the school itself. That pupils and parents may also derive benefit from it, is beside the question.

Appellants stress certain decisions upholding legislation under which free text books are furnished to pupils attending parochial schools. We think it unnecessary to discuss these decisions further than to say that authority is divided on the subject. See *Judd v. Board of Education, supra.* For we think chapter 53, Laws of 1941, so clearly contravenes Art. I, § 11, and Art. IX, § 2 and § 4, that decisions from other courts on the related subject can be accorded no weight. Particularly must this be so in light of the fact that the identical question now before us has

been passed upon by the courts of Delaware, New York, Oklahoma, and Maryland. *State ex rel. Traub v. Brown,* 36 Del. 181, 172 Atl. 835 (writ of error dismissed by supreme court 39 Del. 187, 197 Atl. 478); *Judd v. Board of Education, supra; Gurney v. Ferguson,* 190 Okla. 254, 122 P. (2d) 1002; *Board of Education of Baltimore County v. Wheat,* 174 Md. 314, 199 Atl. 628. In the *Traub, Judd,* and *Gurney* cases, the acts under consideration were held to contravene constitutional inhibitions no more explicit than ours. The supreme court of Wisconsin, construing a somewhat dissimilar statute, held that, under a constitutional provision much less explicit than ours, public funds could not be used for transportation of pupils attending private schools. *State ex rel. Van Straten v. Milquet, supra.*

In the *Wheat* case, however, the supreme court of Maryland upheld a statute of similar import to chapter 53, Laws of 1941, as a valid exercise of the police power. Were the decision not in lone minority, we should be unable to follow it for the reason indicated earlier in this opinion: That the police power cannot be exercised in contravention of plain and unambiguous constitutional inhibitions.

Judgment affirmed.

SIMPSON, C. J., MILLARD, and STEINERT, JJ., concur.

GRADY, J. (concurring in the result)—I concur in the opinion of the court that the judgment of the lower court should be affirmed, but I am unable to agree that chapter 53, Laws of 1941, is wholly unconstitutional.

Paragraph four of the complaint reads as follows:

"That pursuant to the provisions of said Chapter 53, Laws of 1941, defendant directors of said Consolidated School District No. 201 are using *public funds raised by general taxes in said District and state apportion-*

*ments from the state permanent school fund and the current state school fund,* and state sales and excise taxes, to maintain and operate a school bus over a route designated by said Directors of said District for the transportation of school pupils of the district, who are eligible to attend the common schools, from their homes to the Christian School and return. That said Christian School is located in said District and is a privately owned and operated *sectarian* or parochial school, maintained and *controlled by a church denomination or religious sect, wherein the tenets of the religion of said particular religious sect are taught as a part of the regular curriculum* of said Christian school. That said Christian School is not a part of the public school system of this State and is not under the control of the voters of said Consolidated School District No. 201 nor of defendant Directors as the qualified representatives of said voters." (Italics mine.)

The appellants have admitted the allegations of fact set forth in the complaint. In so far as the act authorizes or requires the school district to defray the expense of transporting pupils to and from the school in question, it offends § 2 of Art. IX of the constitution, because, to do so, the school district would have to use revenue derived from the common school fund and the state tax for common schools, and this cannot be done in support of any other schools than the common schools. Neither can the school district use any other public funds for such purposes, because the school in question gives religious instructions, is under sectarian control and influence, and is a religious establishment within the meaning of § 4 of Art. IX of the constitution, and to authorize and require the school district to use any public funds therefor would offend this provision of the constitution, as well as § 11 of Art. I.

I think, however, the act, as applied to schools, other than the common schools, which meet the requirements of the law as to educational standards and are not devoted to any religious worship, exercise, or in-

struction, are free from sectarian control or influence, and do not constitute religious establishments, is constitutional; and, while the funds referred to in § 2 of Art. IX cannot be used to defray the expense of transportation to or from such schools, I see no reason why other public funds, if made available to the school districts by the legislature, cannot lawfully be used therefor.

The act is designed to afford protection to children attending school under the compulsory school attendance laws against the hazards of the public highways, and it is within the power of the legislature to enact such legislation. A school district is an arm of the state and is subject to control by the legislature to the extent at least that, if it is given the privilege of using the public highways to transport pupils within its limits to its schools, it can be required to transport pupils to other schools, as provided in § 2 of the act, if such schools are not within the classes mentioned in the articles of the constitution referred to above.

ROBINSON, J. (dissenting)—I am not in accord with the majority opinion. In the first place, upon a cursory reading at least, it leaves the impression that but one decided case supports the position taken by appellants. In speaking of the *Wheat* case, in the final and concluding paragraph, the opinion says, in part: "Were the decision not in lone minority, etc." The reasoning by which the conclusion that the *Wheat* decision is in lone minority is reached does not stand up under examination. In the preceding paragraph, it is said:

"Appellants stress certain decisions upholding legislation under which free text books are furnished to pupils attending parochial schools. We think it unnecessary to discuss these decisions further than to say that authority is divided on the subject."

Such decisions—that is, decisions holding that the furnishing of free text books to parochial schools is lawful under constitutional provisions equivalent to our own—cannot justly be so lightly brushed aside. Text books are the very tools with which a parochial school, like any other, carries on its work. They are an indispensable necessity to the performance of its functions; but the transportation of pupils is not. That is merely a convenience.

I venture to say that, however violently opposed, on principle, to parochial schools a man might be, he would not hesitate, in making a trip taking him past a parochial school, to pick up a child struggling through rain or snow to get to that school, on the ground that he was by such an act supporting parochial schools. If charged with so doing, would he not justly reply: "I was only doing a kindness to a little child." At all events, any court that would approve an act providing for the furnishing of free text books to parochial schools, despite constitutional provisions equivalent to our own, would undoubtedly approve the act which we now have under consideration. The opinion concedes that there are decisions of the kind above mentioned. Each and every decision of that kind is a persuasive authority for the position taken by the appellants in this cause.

Toward the end of the opinion, four cases are cited which are therein said to present a situation identical with that presented by the instant case. One of these decisions is conceded to be a direct authority for the appellants. The others are said to be authority for the respondent. I shall discuss only one of the three, choosing that case upon which respondent most strongly relies in his brief: *Gurney v. Ferguson,* 190 Okla. 254, 122 P. (2d) 1002. I set out, as he has done in his brief,

the respective constitutional provisions involved, in parallel columns:

"OKLAHOMA CONSTITUTION: "Article 2, Sec. 5. No public money or property shall ever be appropriated, applied, donated, or used, directly *or indirectly,* for the use, benefit, or support of any sect, church, denomination, or system of religion, or for the use, benefit or support of any priest, preacher, minister, or other religious teacher or dignitary, or sectarian institution as such." (Italics mine.)

"WASHINGTON CONSTITUTION: "Article 1, Sec. 11. . . . No public money or property shall be appropriated for or applied to any religious worship, exercise, or instruction, or the support of any religious establishment. . . . "

To my mind, these provisions are markedly dissimilar. Note the *"directly or indirectly"* in the Oklahoma constitution. I should think that that language is so strong as to support a plausible argument that Oklahoma could not even validly exempt the property of parochial schools from taxation.

I pursue the discussion as to the weight of authority no further, but leave it with the statement that I have no doubt that all the pertinent cases are cited in the excellent briefs filed in this case, and that, to my mind, the authorities seem about equally divided.

Although I have had no personal contacts with parochial schools, I feel that it is safe to say that the motives of those who maintain them are by no means wholly sectarian. The American people, and particularly those of them who were born, or have lived, in the states carved out of the old Northwest, have ever given the ordinance of 1787 a place of honor as a fundamental, political document, inferior only to those occupied by the Declaration of Independence and the Federal constitution, and this, because it contains the following striking sentence:

"Religion, morality, and knowledge, being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged."

The meaning of that sentence is more readily apparent if it be turned around and paraphrased—with exactness:

Schools and the means of education shall forever be encouraged [because] religion, morality, and knowledge [are] necessary to good government and the happiness of mankind.

I take it that the author of the sentence, above quoted, thought that religion should be taught in the schools. Its authorship is generally attributed to Thomas Jefferson. It would seem likely that he would think that religion should be taught in the schools, in some general way at least, for it was he who took a purely religious concept and made it the political creed and philosophy of a new nation:

"We hold these truths to be self-evident: That all men are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, and the pursuit of happiness; that to secure these rights, governments are instituted among men, . . . "

That is to say: All men are the sons of a Divine Creator, hence they are equal and therefore entitled to equal rights, and to insure those rights a new government will be created. Personal liberty, the dignity and worth of the individual, all of our basic political philosophy—all of the things for which our sons and brothers are now fighting upon every continent and upon every sea—are but derivatives from that parent religious concept of life, and our coinage still bears the legend: "In God we trust."

It is one of the greatest of paradoxes that, notwithstanding all this, every species of religious instruction, and even the Bible itself, is outlawed from the common schools of our state, and from those of most, if not all, of our sister states. See *State ex rel. Dearle v. Frazier*, 102 Wash. 369, 173 Pac. 35, Ann. Cas. 1918F,

1056. We are not here concerned with the wisdom or the unwisdom of that policy. I state the matter as a fact which explains why certain earnest and devout persons who sincerely believe that religion "is necessary to good government and the happiness of mankind" have felt it necessary to incur the heavy expense of establishing and maintaining parochial schools. Their right to do so has, in recent years, been sharply questioned, but it has been fully upheld by the supreme court of the United States in *Pierce v. Society of Sisters of Holy Names*, 268 U. S. 510, 69 L. ed. 1070, 45 S. Ct. 571, 39 A. L. R. 468. Such schools have long been maintained in this state, and the state has liberally contributed to their support by exempting their property from taxation. This, of course, is a legal recognition that their existence is beneficial to the people as a whole, else there would be no justification for such exemption.

While, in his briefs and upon oral argument, the respondent placed his main reliance upon the Oklahoma decision in *Gurney v. Ferguson, supra,* the majority opinion mainly relies upon the case of *Judd v. Board of Education,* 278 N. Y. 200, 15 N. E. (2d) 576, 118 A. L. R. 789. Briefly, that case disposes of the question in this wise:

"The purpose of the transportation is to promote the interests of the private school or religious or sectarian institution that controls or directs it. *Without pupils there could be no school.*" (Italics mine.)

At first blush, this seems to be a devastating argument, but it is nevertheless fallacious. It has no validity unless it be assumed that, if there be no busses, there will be no pupils; but can any one doubt but that parents who pay taxes to support the public schools, and yet share in the heavy expense of maintaining parochial schools, will contrive in some way

or another to send their children to those schools, as they have heretofore sent them, whether bus service is available or not? No pupils, no school, is in no way involved. The legislature, in passing chapter 53, Laws of 1941, was not concerned with supplying pupils to the parochial schools, but with furnishing *safe* transportation to those pupils who do attend parochial schools.

(In fairness to the court which decided the *Judd* case, *supra*, I insert this note to point out, the majority opinion having failed to do so, that that was an action by resident taxpayers of a school district to enjoin the members of its board of education from collecting a tax which they had levied to raise $3,350 for the sole purpose of transporting pupils to one certain parochial school *which was not even located in their district*. Had I been a member of that court I would have unhesitatingly joined in issuing the injunction therein prayed for.)

The 1941 legislature, in enacting chapter 53, plainly stated its purpose, and I have no reason to question its good faith. The act is entitled:

"An Act relating to the health, welfare and safety of children attending elementary schools and high school . . ."

I forbear from further quotation of the title because it is set out in full in the majority opinion, but § 1 of the act, which is even more pertinent, is not set out. It declares it to be:

" . . . of vital importance to the State of Washington to avoid and minimize the multiple accidents and traffic hazards to which children of school age are subjected upon the roads and highways of the state, and to promote the health, welfare and safety of the children attending elementary schools and high schools in accordance with the laws of this state."

In carrying out that purpose, the legislature did not

provide for supplying a bus or busses to be controlled by, or used for the support of, any religious or sectarian institution; it merely provided that, when a bus is operated by a public school, it shall also pick up children attending a parochial school when such parochial school is near or along its route—a mere kind of "share-the-ride" system not unfamiliar in these days.

I, of course, concede that, even though a statute be enacted in the exercise of the police power, it must be held unconstitutional if contrary to constitutional provisions or prohibitions. However, it is equally elementary that a statute, regularly enacted by the legislature, is clothed with the presumption of constitutionality. When a statute is actually enacted in the exercise of the police power, this presumption is especially strong. Indeed, in practice at least, the presumption is then regarded as almost conclusive. For example, I do not know, nor can I imagine, on what other theory the decision of this court in *State ex rel. Hamilton v. Martin,* 173 Wash. 249, 23 P. (2d) 1, commonly referred to as the "insurrection bond" case, can be accounted for, and the same can be said of the more recent decision of this court in *Conant v. State,* 197 Wash. 21, 84 P. (2d) 378. In that case, this court interpreted a statute as granting thirty dollars per month to all persons, "regardless of need," who had reached the age of sixty-five years, and then, having so interpreted it, held it valid. It must have done so on a theory that it was a police power measure, even though the "regardless of need" interpretation really converted the grant into a mere gratuitous donation.

Finally, it is also elementary that, in questioning the constitutionality of a statute, all doubts must be resolved in favor of the legislature. *State ex rel. Todd v. Yelle,* 7 Wn. (2d) 443, 452, 110 P. (2d) 162. The statute under consideration was professedly enacted

for the welfare of the children, not for the support of the schools, though they may get some indirect benefit from it. I am not convinced that it authorizes a forbidden diversion of school funds, or that its purpose or its effect is to apply public money to religious worship or instruction or to the support of any religious establishment; nor am I at all able to conceive how or in what manner it can possibly subject schools, supported in whole or in part by public funds, to sectarian control or influence.

Being of the belief that chapter 53, Laws of 1941, has not been shown to be unconstitutional, I dissent from the majority opinion.

BEALS and JEFFERS, JJ., concur with ROBINSON, J.

MALLERY, J. (dissenting)—The majority opinion holds the act to be unconstitutional for the reason that it contravenes four sections of our state constitution. These sections, in the order in which they are cited, are: Art. IX, § 2; Art. IX, § 4; Art. I, § 11; and Art VIII, § 7. I shall discuss these sections in the same order.

*First.* Art. IX, § 2, of the state constitution, provides:

"But the entire revenue derived from the common school fund, and the state tax for common schools, shall be exclusively applied to the *support* of the common schools." (Italics mine.)

Under the act, the school bus remains the property of the public school district, and under its management and control. Where, then, is the tangible thing received by the private or parochial school that can be said to constitute *support*? Let it be noted that the word used in the above section is *support*. The majority construe the section as if the words *indirect benefit* were used instead. This leads to a conclusion exactly

opposite to what would have been reached had the correct word been used.

Webster's New International Dictionary gives this definition of support: "To furnish with funds or means for maintenance; to maintain; to provide for; as, to support a family." It is unnecessary to consult Webster as to the difference between the meanings of the words *support* and *benefit*.

A religious school gets as much benefit from a city fire department as it is possible for any one to get, yet the fire department does not *support* the school.

This misuse of words is the real source of the error in the majority opinion. However, I think it not improper to point out a fallacy in their logic even though the word benefit is used by them instead of the word support.

The majority opinion concedes the constitutionality of a prior act which provided for the transportation of public school pupils to and from public schools. They hold that the instant act, which would permit pupils of private or parochial schools to ride on the public school busses, is unconstitutional. Briefly, their reasoning is based on the following chain of hypotheses: (1) That the expenditure of public school funds is inhibited by the constitution if it is a benefit to or in aid of a private or parochial school; (2) that permitting private or parochial school students to ride on a public school bus is a benefit to and in aid of the private or parochial school; (3) that the benefit to the private or parochial school is based upon the fact, assumed as a matter of law, that: (a) the transportation increases the number of pupils attending the private or parochial school, and (b) that this increase of attendance is a benefit to the school.

They presume, as a matter of law, that transportation of the Christian school pupils in school district

No. 201's bus would increase the enrollment of the Christian school. This must be based upon the conclusion that there are, in district No. 201, pupils, who are not attending the Christian school, who would transfer from the public school to the Christian school if they could ride in the public school bus. Though I concede its possibility, it is not a fact of which the court may take judicial notice. The only facts that may be presumed are those in favor of constitutionality.

Upon the question of facts that touch the constitutionality of a statute, this court in *State ex rel. Govan v. Clausen*, 108 Wash. 133, 183 Pac. 115, quoted with approval:

" 'If evidence was required of a fact, it must be supposed that it was before the legislature when the act was passed; and, if any special finding was required to warrant the passage of the particular act, it would seem that the passage of the act itself might be held equivalent to such finding.' "

The concluding fallacy of their hypotheses is the erroneous presumption of fact that it is the school and not the pupils that benefit from the transportation. I rely, by analogy, on *Cochran v. Louisiana State Board of Education*, 281 U. S. 370, 74 L. Ed. 913, 50 S. Ct. 335, in which it was held that books furnished for private schools were not granted to the schools themselves, but only to or for the use of the children.

An erroneous rule of law has been laid down by the majority opinion: That, if the transportation of private or parochial school pupils is a benefit to the school, it is immaterial and beside the question that it is also of some benefit to the pupil. The correct rule should be: If the pupils derive a benefit from the transportation, any benefit to the private or parochial school is beside the question, unless, of course, the benefit is also a *support* of the school.

*Second.* Art. IX, § 4, provides:

"All schools maintained or supported wholly or in part by public funds shall be forever free from sectarian control or influence."

The majority opinion, in citing the above, leaves us completely in the dark as to what its application to the instant case is. Unless riding in a school bus is a religious observance, I think it is safe to say that the public schools remain free from sectarian influence and control by the provisions of the act, and, since no funds are given to the private or parochial schools, this section, likewise, has no application in construing the act.

*Third.* Art. I, § 11, is as follows:

"No public money or property shall be appropriated for or applied to any religious worship, exercise, or instruction, or the support of any religious establishment. . . ."

This section has no application to the act. Manifestly, school busses have nothing to do with religion, and no property, money, credit, or thing of value is applied, granted, conveyed, or loaned to any religious establishment. Hence, no religious establishment receives any *support* for the reasons heretofore given.

*Fourth.* Art. VIII, § 7, provides:

"No county, city, town, or other *municipal corporation shall* hereafter *give any money or property, or loan its money or credit, to or in aid of any individual, association,* company, or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company, or corporation." (Italics mine.)

The act makes no provision whatever *to give* any school district money or property, *or loan* its money or credit to, or in aid of, any private or parochial school.

The majority opinion does not and cannot point out any way in which it does.

This section is, however, the probable source of the error in the majority logic. From it, they pick out the phrase *in aid of* and by using it out of its context, as if it were contained in Art. IX, § 2, instead, they arrive at the erroneous rule that, if a thing is in aid of a school, directly or indirectly, it is also *in support* of it. All that was said under the Art. IX, § 2, heading, applies here with equal force.

Before closing my dissent, I desire to advert to a point of contention raised between appellant and respondent in their briefs that was not discussed in the majority opinion. I specifically disavow any possible inference that I think that the majority opinion turned upon the following point. I quote respondent's brief, page 32:

"Appellants admit (Br. page 27) that furnishing all transportation for public school children is 'legally in support of the common schools' and proceeds to argue that the private, or parochial school child has a right to 'on a parity with his public school brother avail himself *at the common school of any other facilities offered therein.'*

"With this statement we have no controversy, for it is admitted that if the private or parochial school child *attends the common schools* he is entitled to transporta- tion thereto."

The necessary inferences from respondent's conten- tion are that a pupil must be enrolled exclusively in a public school as a prerequisite to the enjoyment of public school facilities; that unless the pupil uses *all* the facilities of the public school, he or she is ineligible to use any. In short, that the pupil is put to an all, or nothing, election. Respondent cites no constitutional authority for this and none can be cited. Certainly it is not supported by Art. IX, § 1, of the state consti- tution which provides:

"It is the paramount duty of the state to make ample provision for the education of all children residing within its borders, without distinction or preference on account of race, color, caste, or sex."

Yet, respondent says to the pupil in effect, "Give up your religious training secured in the private school, or you may not ride on the public school bus." In contrast with this, the court in *Chance v. Mississippi State Textbook Rating & Purchasing Board,* 190 Miss. 453, 200 So. 706, said:

"In furnishing vaccine for its diseased, shelter for its needy, care for its insane, uniforms for its militia, and protection against 'acts injurious to morals,' the state recognizes needs that are physical, material, mental and moral, and recognizes them with a gaze which throws out of focus any credal background. Even as there is no religious qualification in its public servants for office, *there should be no religious disqualification in its private citizens for privileges available to a class to which they belong."* (Italics mine.)

Indeed, it has been held in *Commonwealth ex rel. Wehrle v. Plummer,* 21 Pa. Dist. 182, that pupils of a private sectarian school, who are personally qualified and reside in a school district, which maintains, as an integral part of its public school system, a manual training school, may not be deprived of admission to such manual training school by reason of the fact that their elementary or academic education has been, *or is being,* received in a school other than a public school. It was held in *Commonwealth ex rel. Wehrle v. School District of Altoona,* 241 Pa. St. 224, 88 Atl. 481, that a manual training school, conducted in the common schools, but maintained as an additional department under a statute opening such additional departments to private as well as public school children, cannot refuse admission to a private school pupil, the court saying:

"If it be admitted that it is the climax of the manual training received in the elementary public school, there is no more reason for excluding this applicant from its benefits *because he is not matriculated* in such elementary school than there would be for excluding him from the public school because he had not qualified for admission to it in the elementary public schools." (Italics mine.)

Of course, public school authorities may prescribe rules and regulations for schools. The legislature may do likewise and has, in fact, done so by the passage of this act in question. But certainly no inhibitions can be found in either the state or Federal constitution that would prevent a pupil, in accordance with a legislative enactment, from being a part time pupil, attending the day school and not the night school or *vice versa,* partaking of the school hot lunch without riding on the school bus, or *vice versa,* and taking fewer courses than the entire high school curriculum; *or enjoying equally, with every other pupil, any one or more of the facilities of the public school which continue to remain a part of the public school entity, without any qualification of exclusive enrollment or the forbearance of private or parochial school attendance.*

If the presumption of the constitutionality of this act is to be overcome, it must be upon some theory other than the *support of parochial schools,* or the *all or none election,* theories.

The judgment should be reversed.

---

May 19, 1943. Petition for rehearing stricken.