[No. 30494. *En Banc.* June 9, 1949.]

YELTE VISSER *et al., Appellants,* v. NOOKSACK VALLEY SCHOOL DISTRICT No. 506 *et al., Respondents.*[1]

[1]Reported in 207 P. (2d) 198.

*Wettrick, Flood & O'Brien* and *R. B. LeCocq,* for appellants.

*Boone Hardin* and *Tom A. Durham,* for respondents school district *et al.*

*Meier & Murray,* for respondent Wight.

STEINERT, J.—The plaintiffs, Yelte Visser and Jennie Visser, his wife, instituted this action, seeking a writ of mandamus to compel the defendants, Nooksack Valley School District No. 506, Whatcom county, and the members of its board of directors, forthwith to permit plaintiffs' minor children, in their attendance upon a religious, private school within the defendant school district, to use the transportation facilities provided and operated by the defendants for children attending public school within that same district. Defendants appeared and by proper pleadings resisted plaintiffs' action. Archibald Larson Wight, a resident and taxpayer of the school district, was permitted, upon his complaint in intervention, to intervene in the action and join with the defendants in resisting plaintiffs' claims and demands.

The plaintiffs having filed their fourth amended complaint, the defendants and the intervener demurred thereto, and the trial court, after benefit of trial briefs and oral argument, rendered its memorandum opinion, pursuant to which it entered its order sustaining both demurrers. Upon plaintiffs' refusal to plead further and their election to stand upon their complaint as amended, the trial court entered its order dismissing the action. Plaintiffs appealed, and will hereinafter be referred to as appellants. The defendants and the intervener will be referred to as respondents.

The facts as alleged in the fourth amended complaint, and by the demurrers admitted to be true, are, so far as material here, substantially as follows: Appellants and their three minor children are citizens of the United States of America and residents of Sumas, Whatcom county, Washington. Their home, located in Nooksack Valley

School District No. 506, is more than two miles distant from the Sumas public school and also more than two miles distant from a school known as Sumas Christian School, with which this action is particularly concerned. Both of these schools are within Nooksack Valley School District No. 506.

Under the compulsory attendance laws of this state, appellants' children are required to attend an approved, accredited school. In compliance with such laws, and at the election of appellants, their children attend Sumas Christian School. This latter school is owned and operated by Sumas Christian School Society, Inc., a voluntary society under the laws of the state of Washington. The members of the society are the parents of the children who for the most part comprise the attendance in that school, and these parents, including appellants, and their children respectively are members of the religious faith known as "Christian Reformed Faith." The school administers a full content of civic and secular instruction as required by the laws of this state and,

". . . without conflicting therewith or derogating therefrom, in addition thereto furnishes instruction in the religious principles of the Christian Reformed Faith which the plaintiff [appellant] parents deem essential and imperative in order that their children may, in compliance with the prerogatives and sanctions of the First Amendment to the Constitution of the United States and with the laws of compulsory attendance of the State of Washington, occupy their places worthily in society and in the state; . . ."

In so attending Sumas Christian School, appellants' minor children are required to, and do, make use of the public highways of this state. The school district has ample transportation facilities in its possession, or under its control, or available to it, with which to furnish transportation for all school children within the district required by law to attend school, and has ample public funds with which to provide such transportation. The school district does regularly furnish transportation to children living within its territory and attending public school therein, but refuses

to furnish transportation to children, including appellants' children, attending Sumas Christian School, despite the fact that such children render themselves available for transportation, along the route regularly established for, and used by, the school district.

Appellants' action is based on chapter 141, p. 390, Laws of 1945, entitled:

"AN ACT relating to education; providing for support of the common schools and transportation of children to schools; establishing procedures therefor; amending [certain sections of former acts]; repealing certain acts and parts of acts and all acts and parts of acts in conflict herewith; and declaring an emergency."

Section 13 of the act, Rem. Supp. 1945, § 4719-1, the provisions of which constitute the basis of controversy here, reads:

"All children attending school in accordance with the laws relating to compulsory attendance in the State of Washington shall be entitled to use the transportation facilities provided by the school district in which they reside."

The 1945 act was passed at the very next session of the legislature following the decision of this court in the case of *Mitchell v. Consolidated School Dist. No. 201*, reported in 17 Wn. (2d) 61, 135 P. (2d) 79, 146 A. L. R. 612, to which we shall have occasion to refer at some length, a little later in this opinion.

The basic question involved in this appeal deals with the constitutionality of § 13, p. 399, chapter 141, Laws of 1945, quoted above, in so far as it is contended by appellants that this section compels, or purports to compel, respondents to furnish transportation, provided at public expense, to children attending religious, sectarian, or parochial schools.

The provisions of the Washington state constitution applicable to the question here involved are the following:

Article I, § 11. ". . . No public money or property shall be appropriated for or applied to any religious worship, exercise, or instruction, or the support of any religious establishment. . . ."

Article IX, § 2. "The legislature shall provide for a general and uniform system of public schools. The public

school system shall include common schools, and such high schools, normal schools, and technical schools as may hereafter be established. But the entire revenue derived from the common school fund, and the state tax for common schools, shall be exclusively applied to the support of the common schools."

Article IX, § 4. "All schools maintained or supported wholly or in part by the public funds shall be forever free from sectarian control or influence."

The two sections of Article IX, quoted above, were adopted pursuant to, and in compliance with, the requirements of the Enabling Act (approved by Congress February 22, 1889), wherein it is commanded (fourth paragraph of § 4):

"That provision shall be made for the establishment and maintenance of systems of public schools, which shall be open to all the children of said states, and free from sectarian control."

By Article XXVI of the Washington constitution, this state accordingly made a compact with the United States, as follows:

". . . Fourth. Provisions shall be made for the establishment and maintenance of systems of public schools free from sectarian control, which shall be open to all the children of said state."

In view of the fact that the case of *Mitchell v. Consolidated School Dist., supra,* is discussed at length in the briefs of respective counsel, and because it deals directly with the questions with which we are here confronted, we deem it appropriate at this point to notice the facts presented in in that case and the conclusions at which this court arrived thereon.

That case involved the constitutionality of chapter 53, p. 120, Laws of 1941 (Rem. Supp. 1941, §§ 4776a, 4776b [P.P.C. §§ 883-7, -9]), which was an act entitled:

"AN ACT relating to the health, welfare and safety of children attending elementary schools and high school in accordance with the laws of this state; and providing for the transportation of school children attending private or parochial schools in all cases wherein provision for trans-

portation of children attending public schools has been made."

In § 1 of that act, the legislature declared that it is a matter of paramount concern of this state to provide an opportunity and adequate facility to every child of school age, in every school district within the state, to obtain and procure an education in the primary and high schools of the state, and that it is also of vital importance to the state to avoid and minimize the multiple accidents and traffic hazards to which children of school age are subjected upon the roads and highways, and to promote the health, welfare, and safety of the children attending such schools.

Section 2 of the act provided:

"Whenever any district school board shall, pursuant to any laws of the State of Washington, provide transportation for pupils attending public schools, all children attending any private or parochial school under the compulsory school attendance laws of this state shall, where said private or parochial school is along or near the route designated by said board, be entitled equally to the same rights, benefits and privileges as to transportation as are so provided for by such district school board for pupils attending public schools."

The admitted facts in that case were, as succinctly stated by this court in its opinion therein, as follows:

"That, pursuant to chapter 53, Laws of 1941, the directors of the school district are using public funds *from the state permanent school fund and the current school fund*' (italics ours) for the transportation, in a school bus, of children eligible to attend the common public schools to and from the Christian school; that the Christian school is located in district No. 201; that it is a privately owned and operated sectarian or parochial school maintained and controlled by a church denomination or religious sect; that the religious tenets of such sect are taught as a part of the regular curriculum of the school; and that the school is not a part of the public school system of the state, nor is it under the control of the voters of the school district or their representatives, the directors."

Preliminary to its discussion of the constitutional questions there presented, the court made a number of observations, concluding with this pronouncement:

"The police power—broad and comprehensive as it is—may not be exercised in contravention of plain and unambiguous constitutional inhibitions. [Citing authorities.]"

The court then set forth the provisions of Art. IX, §§ 2 and 4, and Art. I, § 11, of the Washington constitution, as we have quoted them above.

With the facts, as hereinbefore outlined, presented to it, and applying to them these mandatory constitutional provisions, this court said:

"In face of these constitutional provisions, it would seem too clear for argument that the act (chapter 53, Laws of 1941) transcends the police power of the legislature. Giving the act its fullest import, it is nothing more nor less than a mandate to the directors of public school districts in which busses are operated for the transportation of pupils to and from public schools to carry children to and from private schools."

Proceeding from this general statement with reference to the effect of these constitutional provisions, considered as a whole, and to render its disposition of the case doubly clear and emphatic, the court then made specific application of the respective constitutional provisions, considered separately. Holding, first, that the legislative act fell within the inhibition of Art. IX, § 2, of the constitution, the court said:

"'The act does not make a specific appropriation of school funds for carrying out its purpose. But, to carry out its purpose, the directors of school districts must, of necessity, resort to the *common school fund.* As such, they have no other resource. It is clear that the act contravenes Art. IX, § 2, of the constitution in that it *necessitates the use of common school funds for other than common school purposes.*" (Italics ours.)

Appellants in the instant case, however, take the position that there are funds available on which the school board might legally draw in order to pay whatever additional

cost has been occasioned by the passage of § 13 of the 1945 act. Their argument on this phase of the controversy consists of a detailed analysis of the various school funds provided by statute, and, on the basis of that analysis, they conclude that some of such funds, at least, are not limited, either constitutionally or legislatively, to common school purposes. Respondents, on the other hand, are equally emphatic, by argument and analysis, to the point that the only funds available to the school district for the purpose of providing transportation are those the use of which is inhibited by the constitution of this state.

We shall not undertake, in this opinion, to pick out and assemble the various statutes, or parts thereof, which, taken together, constitute the present school tax-and-financial structure of this state, for it would be an almost impossible task to do so. We can readily accept appellants' own statement, appearing in their brief, with regard to such an effort:

"There is only one indubitable conclusion to be derived from a study thereof: The pyramidal accumulation of various taxing and revenue statutes throughout successive legislative sessions, many of them cross-referenced vaguely and ambiguously to each other, leaves one with an inevitable impression of labyrinthal complexity, sufficient to baffle a lifetime study by an accounting genius."

Were we to adopt respondents' contentions concerning the nature of available funds, there would be good ground for holding, under the authority of the *Mitchell* case, *supra,* that § 13 of the act here in question is violative of Art. IX, § 2, of our constitution. However, to dispose of this case we do not find it necessary to decide that perplexing question, and therefore we shall not rest our decision upon that particular ground nor upon the alleged infringement of that article of the constitution.

We accordingly pass to the second ground of holding covered by the *Mitchell* case, having reference to Art. IX, § 4, and Art. I, § 11, which command (1) that all schools maintained or supported wholly or in part by *public funds* shall be forever free from sectarian control or influence, and (2) that *no public money or property* shall be appro-

priated for or applied to any religious worship, exercise, or instruction, or the support of any religious establishment.

Upon that phase of the controversy, this court, in the *Mitchell* case, *supra,* said:

"We think it equally clear that it contravenes Art. IX, § 4, and Art. I, § 11, unless it may be said that the transportation of pupils to and from the Christian school is of no benefit to the school itself. Appellants endeavor to uphold the act upon that qualification, contending that the transportation of pupils to and from the school inures exclusively to the benefit of the pupils and their parents, in that it simply relieves them from the obligation incident to compulsory attendance statutes of providing transportation themselves. . . .

"We cannot, however, accept the validity of the argument that transportation of pupils to and from school is not beneficial to, and in aid of, the school. Even legislation providing for transportation of pupils to and from public schools is constitutionally defensible only as the exercise of a governmental function furthering the maintenance and development of the common school system. [Citing Const. Art. IX and cases.]"

The statute involved in the *Mitchell* case, *supra* (chapter 53, Laws of 1941), does not differ materially from the statute involved in the instant case (chapter 141, Laws of 1945), although the former act was perhaps more explicit in coverage. It provided that all children attending any private or parochial school under the compulsory attendance laws of this state were to be accorded the same rights, benefits, and privileges with regard to transportation provided by school districts, as were children attending public schools. The 1945 act, without referring to any particular kind of school, whether public, private, or religious, simply states that *all children* attending school in accordance with the laws relating to compulsory attendance in this state shall be entitled to use the transportation facilities provided by the school district in which they reside. The term "all children attending school" would of course include "all children attending any private or parochial school."

▉ It is conceded that Sumas Christian School is owned and operated by Sumas Christian School Society, Inc., a voluntary society composed of members of a particular religious faith, and that in the conduct of its school the society furnishes instruction in the religious principles of that faith, deemed essential and imperative in order that the children may worthily occupy their places in society. The school is therefore not "forever free from sectarian control or influence," and, in our opinion, constitutes a "religious establishment" within the meaning of Art. I, § 11, *supra*.

The question of constitutionality of the statute thus resolves itself to this: Does school bus transportation to or from religious, or sectarian, schools constitute support or maintenance of such schools?

▉ Transportation to or from school differs, in both degree and nature, from those indirect, incipient, and incidental benefits which accrue to schools, as buildings, or to its pupils, as citizens, under normal health, welfare, and safety laws of the state. In both inception and operation of schools, transportation thereto and therefrom is a vital and continuous financial consideration. Any private, religious, or sectarian schools which are founded upon, or fostered by, assurances that free public transportation facilities will be made available to the prospective pupils thereof, occupy the position of receiving, or expecting to receive, a direct, substantial, and continuing public subsidy to the schools, *as such,* thus encouraging their construction and maintenance, and enhancing their attendance, at public expense.

The following paragraph, taken from *Judd v. Board of Education,* 278 N. Y. 200, 211, 15 N. E. (2d) 576, 118 A. L. R. 789, as quoted with approval in the *Mitchell* case, *supra,* expresses our view with reference to the case at bar:

"The argument is advanced that furnishing transportation to the pupils of private or parochial schools is not in aid or support of the schools within the spirit or meaning of our organic law but, rather, is in aid of their pupils. That argument is utterly without substance. . . . Free transportation of pupils induces attendance at the school. The

purpose of the transportation is to promote the interests of the private school or religious or sectarian institution that controls and directs it. 'It helps build up, strengthen and make successful the schools as organizations' [citing cases]. Without pupils there could be no school. It is illogical to say that the furnishing of transportation is not an aid to the institution while the employment of teachers and furnishing of books, accommodations and other facilities are such an aid. In the instant case, $3,350 was appropriated out of public moneys solely for the transportation of the relatively few pupils attending the specific school in question. If the cardinal rule that written constitutions are to receive uniform and unvarying interpretation and practical construction is to be followed, in view of interpretation in analogous cases, it cannot successfully be maintained that the furnishing of transportation to the private or parochial school out of public money is not in aid or support of the school."

Our answer to the question above propounded may well be couched in the language used in the majority opinion in the *Mitchell* case, *supra*:

"We think the conclusion is inescapable that free transportation of pupils serves to aid and build up the school itself. That pupils and parents may also derive benefit from it, is beside the question."

We may agree with appellants that transportation is in furtherance of compulsory educational policy. We may further agree that such transportation represents, in part at least, the legislative concern for the safety of children who must use the highways in attending school in accordance with law. But it is also true that, due to many considerations of educational policy, and consistent with the principles of uniformity in the public schools, there has been a centralization or consolidation of the *public* schools into relatively few units. The legislature has seen fit to alleviate against the resulting increases of distance of travel for children attending these schools who are less advantageously located, by making public money and property available for their transportation. To extend these facilities to children attending as many religious, or sectarian, schools as may exist within the district, and over which the district

does not exercise control, would involve a burden on public funds which is not contemplated by, and which is in conflict with, the principles of uniformity and consolidation. In this connection, it must ever be remembered that appellants' children, and all children similarly circumstanced, have a perfect right to attend the public schools and thus avail themselves of the opportunity and benefit of transportation to such schools.

Appellants have attempted to distinguish between support to schools and legislation in furtherance of compulsory educational policy. To pursue such a distinction, involves semantic abstractions beyond the pale of reality. The school, having location and a curriculum, is, in itself, the only true representation of educational policy which is apparent to the senses, and a provision in support or furtherance of the one necessarily supports the other.

Were the extent or degree of support any less than we here deem it to be, no refinement of meaning and purpose of the statute here in question would warrant a departure from the basic philosophy behind the constitutional inhibitions set out above. While constructions placed on constitutional provisions may vary from time to time as social, geographical, ideological, and economic changes appear to warrant, there have been no such changes which would here justify a retreat from, or a partial abrogation of, the foundational purposes upon which the constitutional provisions here involved rest. In so far as § 13, chapter 141, Laws of 1945, purports to compel the school district to furnish the transportation here sought, the legislature has done what our state constitution has said it may not do, for, as stated in the *Mitchell* case, *supra,*

"The police power—broad and comprehensive as it is— may not be exercised in contravention of plain and unambiguous constitutional inhibitions."

Appellants have placed great reliance on the principles announced in *Everson v. Board of Education,* 330 U. S. 1, 91 L. Ed. 472, 67 S. Ct. 504, 168 A. L. R. 1392, which was a five-to-four decision. While that case holds, on its facts, that the incidental furnishing of free public transportation

to parochial schools is not an "establishment of religion," within the prohibition of the first amendment to the United States constitution, nevertheless the right of the individual states to limit such public transportation to children attending the public schools is carefully preserved. Touching that question, the supreme court, in the majority opinion, said:

"While *we do not mean to intimate that a state could not provide transportation only to children attending public schools,* we must be careful, in protecting the citizens of New Jersey against state-established churches, to be sure that we do not inadvertently prohibit New Jersey from extending its general state law benefits to all its citizens without regard to their religious belief." (Italics ours.)

Our own state constitution provides that no public money or property shall be used in support of institutions wherein the tenets of a particular religion are taught. Although the decisions of the United States supreme court are entitled to the highest consideration as they bear on related questions before this court, we must, in light of the clear provisions of our state constitution and our decisions thereunder, respectfully disagree with those portions of the *Everson* majority opinion which might be construed, in the abstract, as stating that transportation, furnished at public expense, to children attending religious schools, is not *in support* of such schools. While the degree of support necessary to constitute an establishment of religion under the first amendment to the Federal constitution is foreclosed from consideration by reason of the decision in the *Everson* case, *supra,* we are constrained to hold that the Washington constitution, although based upon the same precepts, is a clear denial of the rights herein asserted by appellants.

Speaking from the viewpoint of Art. I, § 11, and Art. IX, § 4, of our constitution, we are in full accord with the following pronouncement made by Mr. Justice Rutledge in his dissenting opinion in the *Everson* case, *supra:*

"By no declaration that a gift of public money to religious uses will promote the general or individual welfare, or the cause of education generally, can legislative bodies overcome the Amendment's bar. Nor may the courts sustain their attempts to do so by finding such consequences for

appropriations which in fact give aid to or promote religious uses. [Citing cases.] Legislatures are free to make, and courts to sustain, appropriations only when it can be found that in fact they do not aid, promote, encourage or sustain religious teaching or observances, be the amount large or small. No such finding has been or could be made in this case. The Amendment has removed this form of promoting the public welfare from legislative and judicial competence to make a public function. It is exclusively a private affair."

■ Appellants have also urged that rights under the first amendment to the Federal constitution are at stake if the transportation they seek is denied them. The *Everson* case, itself, is a clear answer to that contention. Furthermore, a decision of the Oklahoma supreme court (*Gurney v. Ferguson*, 190 Okla. 254, 122 P. (2d) 1002) interpreting the constitution of that state as prohibiting the transportation, at public expense, to religious schools, was denied certiorari by the United States supreme court. *Gurney v. Ferguson*, 317 U. S. 588, 87 L. Ed. 481, 63 S. Ct. 34, rehearing denied 317 U. S. 707, 87 L. Ed. 564, 63 S. Ct. 153.

Problems which might arise were this transportation to be furnished private nonreligious schools and denied to religious schools are conjectural only and have no basis in fact or argument here.

Inherent in the very nature of what has been termed the "American Compromise" (60 Harv. L. Rev. 793), which introduced the concept of a public school curriculum devoid of doctrinal content, is the complete neutrality of the state in matters pertaining to religious instruction, apart from the secular instruction it requires. The state may not, and does not, obstruct or discourage the existence of schools established for religious purposes. By the same reasoning, it cannot, and does not, encourage their existence or formation by direct public subsidy.

The demurrers were properly sustained by the trial court, and the judgment dismissing the cause is therefore affirmed.

SIMPSON, SCHWELLENBACH, and GRADY, JJ., concur.

ROBINSON, J. (concurring)—Although I dissented in the case of *Mitchell v. Consolidated School Dist. No. 201,* 17 Wn. (2d) 61, 135 P. (2d) 79, and am still of the opinion that this court reached an unfortunate result in that case, I agree with the author of the foregoing opinion that the *Mitchell* case governs the constitutional questions presented in the instant case. It is, therefore, our duty as judges to apply it in deciding this cause.

For that reason, I concur in the foregoing opinion.

JEFFERS, C. J., concurs with ROBINSON, J.

BEALS and MALLERY, JJ., dissent.

HILL, J., did not participate.

---

August 8, 1949. Petition for rehearing denied.

[1]Reported in 207 P. (2d) 194.