[No. 30667.  *En Banc.*  December 29, 1948.]

*In the Matter of the Employees of* BUFFELEN LUMBER & MANUFACTURING COMPANY *et al.*[1]

*McMicken, Rupp & Schweppe* and *A. V. Stoneman,* for appellants.

*The Attorney General* and *William J. Millard, Jr., Assistant,* for respondent Commissioner of Employment Security Department.

*Wettrick, Flood & O'Brien,* for respondents claimants.

[1] Reported in 201 P. (2d) 194.

Simpson, J.—This is an appeal to review the judgment of the trial court which sustained a decision of the commissioner of the employment security department allowing unemployment compensation benefits to certain employees of appellants.

The employees, whose unemployment compensation claims are in controversy, found themselves unemployed and filed claims for compensation. After examination of the facts, the authorized agent of the commissioner determined the claimants to be involuntarily unemployed, and eligible to receive unemployment compensation benefits. From that determination, the employers appealed to the appeal tribunal of the employment security department. That tribunal approved the determination of the commissioner, and the employers appealed to the superior court of Pierce county.

The matter was presented to the court upon an agreed statement of facts, which were the same as had been presented to the appeal tribunal. The court decided that the employees were entitled to unemployment compensation benefits, and approved the actions of the department.

The assignments of error are: The trial court erred (1) in affirming the decision of the commissioner; (2) in holding the claimants eligible for compensation; (3) in holding that Rem. Supp. 1945, § 9998-321, precludes the court from considering the provisions of the vacation agreement in determining eligibility of the claimants to compensation; (4) in failing to hold that the commissioner misapplied the law; (5) in failing to hold that the commissioner acted arbitrarily and capriciously in determining eligibility of claimants; and (6) in holding the commissioner's decision final.

The agreed facts are these: All of appellants' employees, including those who were making claims for compensation in this case, were members of the Lumber and Sawmill Workers, Local Union No. 2669. The union just mentioned was the exclusive bargaining agent for all employees for collective bargaining in respect to rates of pay, wages, hours of employment, and other conditions of employment

under the National Labor Relations Act, 29 U.S.C.A. 159.

The provisions of the bargaining agency agreement read:

"ARTICLE I. BARGAINING AGENCY

"(a) The Employer recognizes the Union as the properly constituted body for collective bargaining for all of its Employees at the Tacoma plant of the Employer company, except foremen, superintendents, water scalers, office personnel, log buyers and other employees for whom the Union has not heretofore bargained."

A supplemental agreement, relating to vacations, was entered into June 29, 1945. That agreement contained the following provisions:

"All regular employees of the firm on the payroll at the time of their vacation and who were on the payroll for one year prior to the vacation date shall be granted one week's vacation with pay. All regular employees of the firm on the payroll for five years prior to the vacation date shall be granted two weeks' vacation with pay. . . .

"It is understood that vacations may be given by closing down the entire plant during June, July or August, or a part thereof, or by staggering vacations throughout the year, in accordance with the requirements of operation and shipments. The employer shall give and post thirty (30) days' written notice thereof, in order that each employee may make vacation plans."

The first question for determination is whether or not the courts are precluded from considering the provisions of the vacation agreement entered into between the union and the appellants. The statutes of our state relative to this question are as follows:

"Appeal to the courts. Within thirty days after any Commissioner's decision, involving review of an appeal tribunal's decision, has been communicated to any interested party, such interested party may appeal to the Superior Court of the county of his residence, and such appeal shall be heard as a case in equity, but upon such appeal only such issues of law may be raised as were properly included in the hearing before the appeal tribunal. The proceedings of every such appeal shall be informal and summary, but full opportunity to be heard upon the issues of law shall be had before judgment is pronounced. . . ." Rem. Supp. 1945, § 9998-266.

"Jurisdiction of the courts. In all Court proceedings under or pursuant to this act the decision of the Commissioner shall be *prima facie* correct, and the burden of proof shall be upon the party attacking the same.

"If the court shall determine that the Commissioner has acted within his power and has correctly construed the law, the decision of the Commissioner shall be confirmed; otherwise, it shall be reversed or modified. . . . " Rem. Supp. 1945, § 9998-269.

In *In re St. Paul & Tacoma Lbr. Co.,* 7 Wn. (2d) 580, 110 P. (2d) 877, this court defined the power and duties of the courts when reviewing decisions of the commissioner under the unemployment compensation act, which was the one just referred to. In that case we stated:

"Looking to the quoted portion of the act in question relative to appeals taken to the superior court, and having in mind our former decisions relative to statutes of this nature, we are constrained to hold that the administrative determination of the facts is conclusive on the court unless it be wholly without evidential support or wholly dependent upon a question of law, or clearly arbitrary or capricious. It seems certain that the court which tries the case sits as a court of equity with limited powers. The court shall review the issues of law which have been previously raised. The court shall review the power of the commissioner to act. The court shall review the facts only in so far as it is necessary to determine whether the commissioner has acted arbitrarily or capriciously, and whether he applied properly the law to those facts.

"By virtue of the portion of the act which makes the decision of the director *prima facie* correct and imposes upon the attacking party the burden of proof, there is a presumption that the factual findings of the commissioner are not arbitrary or capricious. This presumption cannot be overcome by showing that there was evidence presented from which an opposite conclusion might have been drawn. It must be shown that there was no room for a difference of opinion and that there was no substantial evidence upon which the finding of the commissioner could have been based."

We determined the meaning of "arbitrary and capricious action" as follows in *Sweitzer v. Industrial Ins. Comm.,* 116 Wash. 398, 199 Pac. 724:

"These terms, when used in this connection, must mean wilful and unreasoning action, action without consideration and in disregard of the facts and circumstances of the case. Action is not arbitrary or capricious when exercised honestly and upon due consideration where there is room for two opinions, however much it may be believed that an erroneous conclusion was reached."

The substance of our holding has been that the ascertainment of the facts are, subject to certain qualifications, left to the commission, while the determination of law has been retained in the courts. This was as far as the legislature could go, because it could not take from the courts the right to determine the law. Neither may courts surrender the duty imposed upon them by the constitution to determine the law.

In this case, the department ascertained the facts and attempted to apply the law to those facts as it was able to determine it. It is now our duty to ascertain whether or not the department reached a proper legal conclusion.

The portion of the statute which determines when and under what conditions an employee is entitled to unemployment conpensation is:

"Unemployed individual. An individual shall be deemed to be 'unemployed' in any week during which he performs no services and with respect to which no remuneration is payable to him, . . ." Rem. Supp. 1945, § 9998-170.

"Benefit eligibility conditions. An unemployed individual shall be eligible to receive waiting period credit or benefits with respect to any week only if the Commissioner finds that

"(a) he has registered for work at, and thereafter has continued to report at, an employment office in accordance with such regulation as the Commissioner may prescribe, except that the Commissioner may by regulation waive or alter either or both of the requirements of this subdivision as to individuals attached to regular jobs and as to such other types of cases or situations with respect to which he finds that the compliance with such requirements would be oppressive, or would be inconsistent with the purposes of this act;

"(b) he has filed an application for an initial determina-

tion and made a claim for waiting period credit or for benefits in accordance with the provisions of this act;

"(c) he is able to work, and is available for work in any trade, occupation, profession, or business for which he is reasonably fitted. To be available for work an individual must be ready, able, and willing, immediately to accept any suitable work which may be offered to him and must be actively seeking work;" Rem. Supp. 1945, § 9998-206.

The sole question then presented for our consideration is whether the benefit claimants were voluntarily or involuntarily unemployed by reason of the shutting down of the employer's place of business at the time it granted its employees a two weeks' vacation.

The question is one of first impression. The claimants were active members of the union which, under the law, represented all of its members. As such members, they became entitled to all of the benefits of the working agreement entered into between their union and the employer. These benefits related to hours of labor, pay for Sundays and holidays, time loss during any working day, rights of employees called to work but not put to work, hiring and discharge, layoffs, classification of employees, adjustments of complaints, and rules relative to the business between the union and its contracting party, the employer. The claimants were parties, through their union, to the agreement which had to do with vacations. They were bound by the terms of that agreement to the same effect as they were bound by the working agreement. *In re Polson Lbr. & Shingle Mills*, 19 Wn. (2d) 467, 143 P. (2d) 316.

It is clear that claimants must be held to the liabilities imposed by the contract, and must suffer the result of any provisions in the agreement which is to their detriment. The contract relating to vacations determined which employees were to be paid during vacation periods. The claimants cannot complain that they were not mentioned or their rights ascertained, the reason being that their union spoke for them to the same extent and to the same effect as they could as individuals.

It is our conclusion that the employer was legally acting within the provisions of the vacation agreement, and that its employees were unemployed by their own election. In effect, the employees secured a leave of absence for the period of time the mill was shut down. We hold, therefore, that claimants were voluntarily unemployed, and for that reason were not entitled to unemployment compensation.

The judgment will be reversed.

BEALS, STEINERT, ROBINSON, JEFFERS, and HILL, JJ., concur.

SCHWELLENBACH, J. (concurring)—The union was the exclusive bargaining agency for all employees of appellants. This included not only those employees who were employed at the time the bargaining agency agreement was entered into, but also any who might enter the employ of the company while the agreement was effective. The union spoke for the employees; it was their voice. In reality, the employees themselves, speaking through the union, made the agreement.

On June 29, 1945, all of the employees, speaking through the union, agreed with the company that such of them who would have been on the pay roll for one year prior to the vacation date should be granted one week's vacation with pay, and such of them who would have been on the pay roll for five years prior to the vacation date should be granted two weeks' vacation. In order to grant these vacations, all of the employees, speaking through their union, agreed with their employer that it might, to suit its convenience, either stagger such vacations, or it might close down the entire plant for two weeks. The employer chose to do the latter.

The agreement is silent as to those employees who would not be entitled to vacations with pay of either one or two weeks, and our problem is to determine whether or not, as to them, they were unemployed voluntarily or involuntarily, when the plant was closed down. They were unemployed during the weeks in question because they per-

formed no services and with respect to which no remuneration was payable to them. The plant was closed down as a result of the agreement made with the company by all of the employees, including these claimants. Their unemployment during that period, therefore, was voluntary, and they are not entitled to unemployment compensation.