[No. 32177.　Department Two.　July 24, 1952.]

WHATCOM COUNTY, *Plaintiff and Relator*, v. ARTHUR B.
LANGLIE *et al.*, *Defendants.*[1]

[1]Reported in 246 P. (2d) 836.

*Tom A. Durham* and *Jack Rowles*, for plaintiff and relator.

*The Attorney General* and *Ellis L. Collins, Assistant,* for defendants.

HILL, J.—We have been asked to review, by certiorari, the action of the superior court for Thurston county in refusing to continue a temporary restraining order as an injunction *pendente lite*.

Whatcom county, a municipal corporation, owns and operates a 100-bed general hospital, hereinafter referred to as the county hospital. ("Whatcom county," as used in this opinion, refers to the municipal corporation unless the context indicates a different connotation.)

The state department of health is charged by law with the duty of providing necessary medical care and related services (including hospitalization) to recipients of public assistance. Initiative measure No. 178, § 7; Laws of 1951, chapter 1, § 7, p. 9; *cf.* RCW 74.08.140 *et seq.* The department of health has, since that measure became effective, required all recipients of public assistance in Whatcom county who need hospitalization, to go to the county hospital except in emergencies and for certain types of care which, in the opinion of a screening board of physicians, could not be adequately handled at that hospital; the excepted cases are handled at one or the other of the two privately owned general hospitals in Bellingham, where approximately one half of the population of Whatcom county resides. The state does not pay the county hospital on a patient or case basis, but pays the difference between the cost of operating the hospital and the amount received from private patients. The cost to the state under this arrangement was approximately nineteen thousand dollars a month in 1951, and its payments constituted about ninety per cent of the gross monthly revenue of the hospital.

Dr. J. A. Kahl, acting director of the department of health, entered into a contract April 8, 1952, on behalf of the department, with the two privately owned general hospitals to which we have referred, whereby, for a lump-sum payment of $2.50 a month for each eligible person ("any person who receives public assistance or his dependents covered in his grant," as defined in the contract) in Whatcom and San Juan counties, those two hospitals would undertake to provide all hospital services for all eligible persons. This contract was to become effective May 15, 1952.

Whatcom county takes the position that, without the state's public assistance patients and the state's payments for the services rendered to them on the same basis as heretofore, the county would be compelled to close its hospital immediately. As a basis for an action seeking to enjoin the department of health from carrying out the provisions of the contract of April 8, 1952, the county alleged that the

contract is in direct violation of initiative No. 178 (Laws of 1951, chapter 1), and made the governor, the acting director of the department of health, and the department itself, defendants.

An *ex parte* order was issued April 24, 1952, whereby the individual defendants and the department of health were temporarily

" . . . restrained from carrying out any of the terms and provisions of the contract dated April 8, 1952, between said defendants and certain private hospitals in Bellingham, Washington, and the defendants are further restrained from removing patients from Whatcom County Hospital under the terms of that contract or otherwise, and the defendants are further restrained from failing or refusing to make the regular payments to Whatcom County Hospital on the same basis as heretofore for hospitalization of patients under their jurisdiction."

A hearing was held May 13, 1952, to determine whether the restraining order should be continued in effect as an injunction *pendente lite*, and on May 28th an order was entered terminating the restraining order entered April 24th and denying the injunction *pendente lite*.

The chief justice of this court, at the request of Whatcom county, immediately entered an order keeping the restraining order of April 24th in effect pending the further order of this court, and directing the issuance of a writ of certiorari to review the order of the Thurston county superior court of May 28th. Pursuant to the writ, the record in the superior court was certified to this court and the matter was argued June 20, 1952.

We are met at the outset by a motion to quash the writ. The basis for the motion is Rule on Appeal 14, which reads:

"Any party aggrieved may appeal to the supreme court in the mode prescribed in these rules from any and every of the following determinations, and no others, made by the superior court, or the judge thereof, in any action or proceeding:

" . . . (3) From an order granting or denying a motion for a temporary injunction, heard upon notice to the adverse party, and from any order vacating or refusing to

vacate a temporary injunction: *Provided, that no appeal shall be allowed from any order denying a motion for a temporary injunction, or vacating a temporary injunction unless the judge of the superior court shall have found upon the hearing, that the party against whom the injunction was sought was insolvent.*" (Italics ours.)

This rule comes from a statute enacted in 1893 (Laws of 1893, chapter 61, § 1, as amended by Laws of 1901, chapter 31, § 1) presently carried as RCW 4.88.010 (*cf.* Rem. Rev. Stat., § 1716).

Because, in the absence of a finding of insolvency, there is no review by appeal from an order such as that we are now asked to review, it is urged that there can be no review by certiorari in the absence of such a finding unless we can say that the superior court should, on the record before it, have made such a finding. Eight cases are cited in support of that proposition, the most recent of which is *State ex rel. Seattle Milk Shippers' Ass'n v. Superior Court,* 130 Wash. 668, 228 Pac. 847 (1924).

 The rule refers specifically to appeals, but we have applied it and will apply it to reviews by certiorari where there exists a reason for it, but under the circumstances of this case a reason for application of the rule does not exist. Whether the individual defendants against whom the injunction is sought are insolvent or rich as Croesus is immaterial unless they are liable to Whatcom county for damages.

 The law is that, in the absence of corrupt or malicious motives, public officers such as the individual defendants are not liable personally for errors or mistakes of judgment (and this includes the misconstruction of a statute) in the performance of duties involving the exercise of judgment and discretion. *Tacoma v. Peterson,* 165 Wash. 461, 5 P. (2d) 1022 (1931); *Dunbar v. Fant,* 170 S. C. 414, 170 S. E. 460, 90 A. L. R. 1412 (1933); *Wright v. White,* 166 Ore. 136, 110 P. (2d) 948, 135 A. L. R. 1; *Williams v. Weaver,* 100 U. S. 547, 25 L. Ed. 708 (1880); *Tyler v. Cass County,* 142 U. S. 288, 35 L. Ed. 1016, 12 S. Ct. 225 (1892); *Cooper v. O'Connor,* 99 F. (2d) 135, 118 A. L. R. 1440 (1938). The

conduct of the individual defendants of which Whatcom county complains is not in the performance of a ministerial act but is in the performance of a duty which involves the exercise of judgment and discretion, and there is neither allegation nor proof of malice or corruption.

. Furthermore, if the county has a cause of action and the state has no right to withdraw its patients and its financial assistance from the county hospital and, in consequence of such a withdrawal, the hospital should be closed and its staff leave the community or obtain other employment, the damages to the county would be impossible to prove from a compensatory standpoint. As a matter of fact, operated on the present basis the hospital costs the county nothing, according to its allegations and proof, because private patients pay ten per cent and the state pays ninety per cent of the cost of operation. The county says that it will close the hospital immediately if the state ceases its payments, and there will therefore continue to be no cost of operation borne by the county. The closing of the hospital could mean a very real loss to Whatcom county as a community, but no resulting financial loss to the county as a municipal corporation is suggested by the record.

It appears to us that there would be no compensatory damage and that, even if there were, there would be no liability for damages, on the present state of the record, on the part of the individual defendants against whom the injunction is sought. We are, therefore, in no way concerned with the question of the solvency or insolvency of the individual defendants.

We will not relegate litigants to the right of appeal when it appears that such appeal would be barren of results no matter how it eventuated, nor will we apply one of our rules on appeal to a hearing on certiorari when the reason for its application does not exist. *State ex rel. Smith v. Superior Court*, 26 Wash. 278, 66 Pac. 385 (1901); *State ex rel. Bayless v. Superior Court*, 116 Wash. 535, 199 Pac. 977 (1921). The motion to quash the writ of certiorari is denied.

We pass, then, to a consideration on the merits of the

issue of whether the restraining order of April 24th should have been continued as an injunction *pendente lite*. A few preliminary observations may not be amiss.

Whatcom county has undertaken to operate a county hospital, as it has a right to do. RCW 36.62.010; *cf.* Rem. Supp. 1947, § 6090-1. It is but a statement of self-evident fact to say that the state of Washington, in the absence of a statute requiring it, is under no obligation to utilize that hospital or to provide funds for its operation. That the state has done so in the past under the arrangement heretofore referred to does not, in the absence of some statutory requirement, obligate the state to continue its support in the future on the same basis or at all. Nor are the facts, so forcefully urged upon us, that the county hospital is a convenience to the people of Whatcom county living in the communities north of Bellingham and to the doctors practicing in those communities, and that Whatcom county would be unable to operate the hospital without the payments from the state, determining factors in this litigation.

The sole legal reason urged by the county for compelling the state department of health to use its hospital facilities and to continue payments on the present basis, is a provision of initiative measure No. 178 (Laws of 1951, chapter 1, *cf.* RCW 74.08.010 *et seq.*). We quote the portion of that measure pertinent to the issues now before us:

"Sec. 7. Section 15, chapter 6, Laws of 1949, is amended to read as follows:

"Section 15. (a) On and after the effective date of this amendatory act the state department of health shall be responsible for providing necessary medical, dental and related services to recipients of public assistance and other persons without income and resources sufficient to secure them. Eligibility for such medical service shall be established by the department of social security.

"*In providing these services, it is hereby declared to be the intent of this act to carry out the following principles*:

"(1) Care shall be equivalent to accepted standards of medical and dental practice in the community where the eligible individual resides;

"(2) In addition to meeting immediate and acute medical needs, shall provide or utilize available rehabilitation ser-

vices as far as practicable, to restore or to maintain the individual's capacity for self-reliance;

"(3) Shall develop and strengthen programs for prevention or early discovery of disease so as to maintain or restore the individual to the maximum of self-reliance;

"(4) Shall make full use of all existing public and free facilities and services;

"(5) Shall provide auxiliary services, including hospital and nursing care, ambulance service, drugs, medicines, hearing aids, optical supplies and other appliances in accordance with the plans of the department of health;

"(6) Shall allow the individual as much freedom as practicable in selecting the type of practitioner best able to serve him and if said practitioner has agreed to conform to the rules and regulations prescribed by the state board of health;

"(7) Individuals who are classified as unemployable shall be evaluated in terms of partial or complete rehabilitation so as to be self-sustaining insofar as practicable." (Italics ours.)

The peg upon which Whatcom county hangs its right to the injunctive relief it seeks is "(4)," *supra*, which reads: "Shall make full use of all existing public and free facilities and services." The position of Dr. Kahl and the department of health is that, under "(1)," *supra*, the care in a county hospital must meet the accepted standards for such care in the community, and that the Whatcom county hospital does not meet those standards. On that battleground both sides have expended most of their ammunition. Incidentally, neither party refers to principle No. "(5)," *supra*, which seems to be the only one specifically dealing with hospitalization.

If it were necessary to go into the merits of that controversy, we would have to find, on the record now before us, that Dr. Kahl adequately described the situation when he said of the quality of service being rendered by the county hospital that, "while it was good within its facilities and personnel available, [it] was not comparable to that in the other two institutions." The care that can be given in the county hospital does not, in many types of cases, meet the accepted standards in the community; it is conceded that it

has been and is now necessary to send certain of the public assistance patients to one or the other of the two private hospitals in Bellingham for the care and treatment their condition requires.

However, we do not have to reach a decision on the issue of whether the care given at the county hospital meets the accepted standards in the community. It is readily apparent, from the wording of the italicized portion of the statute as set forth hereinabove, that the seven numbered principles do not constitute an express mandate by the people (this being an initiative measure) that a certain thing or things be done; they are a declaration of the aims, purposes, and intent of the act in relation to the mandate laid down in the preceding paragraph, *i.e.*, that the state department of health shall be responsible for providing necessary medical, dental, and related services to recipients of public assistance.

 The declaration of aims, purposes, and intent is a constituent part of the act and is to be considered in construing, interpreting, and administering it. *Department of Labor & Industries v. Unemployment Comp. Board*, 148 Pa. Super. 246, 24 A. (2d) 667 (1942). Such declarations and recitals, while not operative rules of action, may play a very important part in determining what action shall be taken. *Huntworth v. Tanner*, 87 Wash. 670, 152 Pac. 523 (1915); see, also, statement in dissent in *State ex rel. Berry v. Superior Court*, 92 Wash. 16, 35, 159 Pac. 92 (1916).

 It was not intended, by the statement of principle No. "(4)" in the statute, to give the operator of any "public facility" the right to insist that its particular facility should be used; and certainly that statement of principle gives the operator of such a public facility no right to dictate the financial terms on which the facility is to be used.

It is to be noted that subsection (e) of the same section of the statute provides that:

"The department of health, in providing medical services, shall have the right to procure them in whole or in any part through any one or any combination of the following methods:

"(1) By contract with private individuals, organizations and groups;

"(2) By the employment of a professional and technical staff;

"(3) By direct payment to vendors on a fee for service basis."

■ Assuming for the moment that the execution of the contract complained of was an arbitrary and capricious act by the acting director of the state department of health, that it was a violation of the law, and that Whatcom county has a right to restrain the carrying out of its terms and provisions, we still find no possible justification for the request by the county that the court compel continuance, either temporarily or permanently, of the "payments to Whatcom County Hospital on the basis heretofore made." Whatcom county as a hospital operator, in the absence of a contract, has no protectable interest in the specific terms of payment by the state. A determination of the manner and amount of the payments by the state for hospital care for those eligible to receive it requires the exercise of judgment and discretion, and it cannot be controlled by injunction. *Brunswick v. Elliott*, 103 F. (2d) 746 (1939).

There remains but one question: Did the trial court abuse its discretion in failing to continue the restraining order in effect as an injunction *pendente lite*, or at least that portion thereof that would prevent the performance of the contract of April 8, 1952?

■ The granting or withholding of an injunction *pendente lite* rests in the discretion of the trial court, to be exercised according to the circumstances of the particular case. *Seymour v. La Furgey*, 47 Wash. 450, 92 Pac. 267 (1907); *Eternal Truth Spiritualist Church v. Stuber*, 105 Wash. 154, 177 Pac. 686 (1919); *Blanchard v. Golden Age Brewing Co.*, 188 Wash. 396, 63 P. (2d) 397 (1936).

■■ Assuming but not deciding that Whatcom county was entitled to raise the issue of whether Dr. Kahl's decision to enter into the contract with the two private hospitals in Bellingham was arbitrary or capricious, we are in entire accord with the conclusion of the trial court that no showing

was made which would warrant an injunction *pendente lite*. Dr. Kahl's determination that it was preferable to use the two better equipped and centrally located of the three general hospitals in Whatcom county instead of all three, as it has heretofore been and is now necessary to do, because of the inadequacies of the county hospital, was not, on the showing made before the superior court, arbitrary or capricious or an abuse of discretion. The test, as pointed out by the trial judge, is not whether the decision was the wisest and best that could be made, but whether it was the result of discretion honestly exercised after due consideration of the facts and circumstances. As we said in *Sweitzer v. Industrial Ins. Comm.*, 116 Wash. 398, 199 Pac. 724 (1921), defining "arbitrary or capricious action":

"These terms, when used in this connection, must mean wilful and unreasoning action, action without consideration and in disregard of the facts and circumstances of the case. Action is not arbitrary or capricious when exercised honestly and upon due consideration where there is room for two opinions, however much it may be believed that an erroneous conclusion was reached."

We have quoted and approved this definition several times, most recently in *Straub v. Department of Public Welfare*, 31 Wn. (2d) 707, 198 P. (2d) 817 (1948); *In re Employees of Buffelen Lbr. & Mfg. Co.*, 32 Wn. (2d) 205, 201 P. (2d) 194 (1948); *Robinson v. Olzendam*, 38 Wn. (2d) 30, 227 P. (2d) 732 (1951).

While we do not prejudge the ultimate rights of the parties, no showing has yet been made that Dr. Kahl's action in entering into the contract of April 8, 1952, was arbitrary or capricious.

The order of this court made and entered by the chief justice May 28, 1952, keeping in effect the restraining order issued in the superior court for Thurston county on April 24th, is set aside; and the order of the superior court for Thurston county made and entered on May 28th, terminating the restraining order of April 24th and refusing to issue an injunction *pendente lite*, is affirmed. This decision shall

go into effect immediately and the remittitur will go down forthwith.

HAMLEY, FINLEY, and WEAVER, JJ., concur.

DONWORTH, J., concurs in the result.

SCHWELLENBACH, C. J., MALLERY, and GRADY, JJ., approve having the decision go into effect immediately and having the remittitur go down forthwith.

OLSON, J., did not participate.

[1] Reported in 246 P. (2d) 846.