[No. 37608. Department One. May 6, 1965.]

THE STATE OF WASHINGTON, *on the Relation of Dr. O. A. Lopez-Pacheco, Appellant,* v. DR. WILLIAM E. JONES, *Respondent.*[*]

*William L. Bennett,* for appellant.

*George A. Kain* and *Edward J. Parry,* for respondent.

OTT, J.—The relator sought a writ of mandate to compel Dr. William E. Jones, Coroner of Spokane County, to call a coroner's jury to inquire into the cause of death of his

[*]Reported in 401 P.2d 841.

son, Olaguibeet Angel Lopez-Vera. The relator alleged, *inter alia*, that on January 15, 1962, his son was shot and killed in Spokane county; that "Dr. William E. Jones, based upon his investigation, the investigation of the prosecuting attorney's office, the investigation of the Spokane Police Department, and others, . . . drew the conclusion that the deceased 'shot Policeman Dennis Apperson and then, in an exchange of gunfire, lost his life' "; that, in concluding that decedent died as a result of an exchange of gunfire, the coroner failed to recover certain bullets or slugs, failed to make any ballistic, chemical or scientific tests, and failed to resolve the discrepancies between Dr. Ludden's autopsy report and the reports of the prosecuting attorney and police officers.

The relator further alleged that Dr. Jones' finding of justifiable homicide on the part of the Spokane police and his failure to resolve the conflicting theories constituted arbitrary conduct; that the coroner's findings in this regard "caused irreparable harm and damage to the reputation and memory of the deceased, Olaguibeet Angel Lopez Vera, and has caused irreparable harm and damage to the reputation and name of the relator [Dr. O. A. Lopez-Pacheco] and has caused relator great mental anguish, shame, and torment"; and that there is no plain, speedy or adequate remedy in the ordinary course of law available to relator herein; "WHEREFORE, your relator prays for judgment and that the Court issue a peremptory writ of mandate commanding the respondent, William E. Jones, as Spokane County Coroner, to forthwith hold a formal coroner's inquest in relation to the death of the deceased."

The answer of Dr. Jones, *inter alia*, denied that he had been arbitrary and capricious in failing to hold a formal inquest. Dr. Jones moved to dismiss the proceeding. The motion was supported by affidavits and the record in Spokane County cause No. 169604 which had previously put in issue the coroner's conduct in his investigation of this death and had been dismissed.

Relator's attorney resisted the motion by filing an affidavit repeating the allegations of the petition upon which

the charge of arbitrary and capricious conduct was predicated. He asserted that a person who was near the vehicle at the time of the shooting would testify that "no gun was visible to him in the hands of the deceased," which would establish an inference that Lopez-Vera was unarmed.

The court granted the motion to dismiss upon two grounds, one of which was "1. that the 'Affidavit and Application for Peremptory Writ of Mandate' herein fails to state a claim upon which relief may be granted."

From the judgment of dismissal, relator appeals.

This appeal presents a single issue: Did Dr. Jones, in performing his duties as coroner of Spokane county, act arbitrarily and capriciously when he decided not to hold a formal inquest into the death of Lopez-Vera, after the body had been sent to Puerto Rico and interred, and after he had, in the performance of his duties immediately after the shooting, determined the cause of death and that it was not accomplished by unlawful means?

The statute relating to the holding of an inquest provided:

> Any coroner, *in his discretion, may* hold an inquest if he suspects that the death of a person . . . resulted from unlawful means, . . . or through the instrumentality of some other person: . . . . Laws of 1953, ch. 188, § 3, p. 401, RCW 36.24.020. (Italics ours.)

■ When an administrative officer, by statute, is granted discretionary authority, the burden of establishing arbitrary and capricious conduct rests upon the party asserting it. *State ex rel. Cosmopolis Consol. School Dist. No. 99 v. Bruno*, 61 Wn.2d 461, 378 P.2d 691 (1963). Arbitrary and capricious conduct is defined as follows:

> Arbitrary and capricious action of administrative bodies means willful and unreasoning action, without consideration and in disregard of facts or circumstances. Where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached. *In re Buffelen Lbr. & Mfg. Co.*, 32 Wn. (2d) 205, 208, 201 P. (2d) 194 (1948), and case cited. *Lillions v. Gibbs,* 47 Wn.2d 629, 633, 289 P.2d 203 (1955).

See, also, *State ex rel. Cosmopolis Consol. School Dist. No. 99 v. Bruno, supra,* and cases cited.

The record establishes that Dr. Jones made a full and complete investigation of the death. He personally examined the body of the deceased and caused an autopsy to be performed by a qualified pathologist, and studied the report of the pathologist. He studied the statements of the police officers and the evidence gathered by the deputy prosecuting attorney. He considered the facts and circumstances of Lopez-Vera's preceding *armed* robbery of the Starlite Motel in Spokane, his theft of the Ford automobile belonging to the Webster family, his flight from the scene of the robbery, and his attempt to avoid apprehension by bypassing the police vehicle when he was signaled to stop. When the stolen Ford became disabled, the police officers' report to the prosecuting attorney showed that the following occurred:

The police officers stopped their vehicle, got out and approached the Ford automobile. As they were approaching, the driver's door of the Ford opened and Airman Lopez turned toward the north in the conventional position for getting out of the vehicle and as he turned he had in his hand a revolver which was pointed in the direction of the officers. At this juncture Officer Luders ordered Airman Lopez to drop his gun. Airman Lopez replied, "You drop yours. I am not dropping mine," or words to that effect. At this juncture Airman Lopez was looking at Officer Apperson and when he was doing that Officer Luders reached over and got his hand on Airman Lopez' revolver. After that occurred Officer Apperson yelled again two or three times for Airman Lopez to drop his gun. This did not occur and at this juncture Airman Lopez fired the revolver at Officer Apperson and the shot passed through Officer Apperson's left leg. Immediately after Airman Lopez opened fire the two city police officers had seen Sergeant Worsham arrive and called upon him for assistance.

After that event occurred there were shots fired by Officers Apperson, Luders and Sergeant Worsham. At the time these shots were fired the two city police officers were on the north side of the vehicle and Sergeant Worsham was on the south side of the vehicle. After these

shots were fired which totaled nine in number, Airman Lopez let go of his revolver and got up and started to walk north away from the stolen vehicle. The officers hence did not know what his condition was at the moment and Officer Luders followed him to stop his leaving and when he reached him, which was perhaps fifteen feet from the Ford automobile, and got his hand on Airman Lopez, Airman Lopez endeavored to shrug this off and then fell to the ground obviously from the effect of the shots that had hit him. Nothing further was stated by Airman Lopez and his death apparently ensued in a matter of minutes.

The .38 caliber Smith and Wesson revolver, found on the ground near the left-hand door of the stolen Ford automobile, belonged to Lopez-Vera. It contained one expended .38 casing and three rounds of live ammunition.

Relying upon all these facts, the coroner, in the exercise of his discretion, concluded that Lopez-Vera's death was not accomplished by unlawful means, and that a formal inquest or the calling of a coroner's jury was not necessary because the evidence conclusively established that Lopez-Vera lost his life in an exchange of gunfire with police officers while seeking to avoid apprehension.

The allegations of relator's petition for a writ of mandamus and the affidavit in support thereof, if considered as true, are not sufficient to meet the test of arbitrary and capricious conduct on the part of Dr. Jones, which conduct must be shown to have been "willful and unreasoning action, without consideration and in disregard of facts or circumstances."

The relator, in open court, waived all alleged procedural errors and urged the court to review the merits of the issues raised by the petition. We agree with the trial court that the relator's petition for a writ of mandate failed to state a claim upon which relief could be granted. We do not reach the issue of res judicata which was the trial court's second ground for dismissal.

The judgment is affirmed.

Rosellini, C. J., Hunter and Hale, JJ., and Stafford, J. Pro Tem., concur.