[No. 44192.   En Banc.   July 7, 1977.]

ERLING T. BERGE, ET AL, *Appellants,* v. SLADE GORTON, *as Attorney General,* ET AL, *Respondents.*

John D. Blankinship (of *Montgomery, Purdue, Blankinship & Austin*), for appellants.

*Slade Gorton, Attorney General,* and *Philip H. Austin, Deputy,* for respondents.

UTTER, J.—Erling Berge and others commenced this action in Superior Court, denominated "Taxpayers' Suit on Official Bond and for Professional Malpractice" against Slade Gorton as Attorney General. Gorton moved to dismiss the complaint for failure to state a claim upon which relief could be obtained. The trial court agreed, and the sole issue on appeal is the propriety of that ruling.

This action is an outgrowth of *Weiss v. Bruno,* 82 Wn.2d 199, 509 P.2d 973 (1973), where we held legislation[1] authorizing tuition supplements for students attending private colleges and universities to be constitutionally impermissible by virtue of article 9, section 4 of the Washington State Constitution. We also prohibited state officers from any further disbursement of funds under the program.

Prior to our ruling, eligible students were identified by the institutions involved, and payments under this program were sent directly to the institutions along with a statement of the students whose applications were approved. The Council on Higher Education, which was charged with the administration of the program, disbursed about half the appropriation in the academic year 1971–72 to 8,514 students at 10 different institutions. The total sum so distributed was approximately $845,000.

Following our decision in *Weiss,* the plaintiffs in the present case asked the respondent, Attorney General Slade Gorton, in a letter dated July 27, 1973, whether he intended to attempt the recovery of those funds disbursed in 1971–72, before the program was held unconstitutional. The Attorney General responded that he did not.

In June 1974, the State Auditor, in a report on the Council on Higher Education, suggested that the decision in *Weiss* raised the possibility of a recovery of expenditures made under the tuition supplement program. The report referred the matter to the Attorney General for resolution and recommended "that the Attorney General institute appropriate legal action to recover these expenditures subject, of course, to the resolution of the matter."

Appellants filed their complaint on February 20, 1976, against the State Attorney General, individually, seeking a monetary judgment for the amount of program expenditures plus interest thereon and against his surety, Travelers Indemnity Company. They also sought judgment in the

---

[1]The legislation struck down was enacted by the legislature in Laws of 1971, 1st Ex. Sess., ch. 56, p. 455 and funded through a general appropriation provided in Laws of 1971, 1st Ex. Sess., ch. 275, § 80, p. 1274.

amount of the Attorney General's official bond for defendant Gorton's refusal to attempt recovery of the funds paid out prior to the time the program was declared unconstitutional.

■ The basic rules of law governing this action are clear. A complaint need only set forth a short and plain statement of a claim showing that the pleader is entitled to relief. CR 8(a)(1). No dismissal for failure to state a claim should be granted unless it appears, beyond doubt, that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Sherwood v. Moxee School Dist. 90,* 58 Wn.2d 351, 363 P.2d 138 (1961); *Higgins v. State,* 70 Wn.2d 323, 422 P.2d 836 (1967). Factual allegations of the complaint must be accepted as true for purposes of the motion. *Hofto v. Blumer,* 74 Wn.2d 321, 444 P.2d 657 (1968).

These procedural rules are intended to facilitate the full airing of claims having a legal basis and to this end, we have reversed dismissal of complaints which have adequately set forth a claim for relief. *See, e.g., Brown v. MacPherson's, Inc.,* 86 Wn.2d 293, 545 P.2d 13 (1975); *Barnum v. State,* 72 Wn.2d 928, 435 P.2d 678 (1967); *Higgins v. State,* 70 Wn.2d 323, 422 P.2d 836 (1967). On the other hand, where it is clear from the complaint that the allegations set forth do not support a claim, dismissal is proper. *Gold Seal Chinchillas, Inc. v. State,* 69 Wn.2d 828, 420 P.2d 698 (1966); *State ex rel. Lopez–Pacheco v. Jones,* 66 Wn.2d 199, 401 P.2d 841 (1965); *Davis v. Bafus,* 3 Wn. App. 164, 473 P.2d 192 (1970).

Applying these rules to the facts of this case, appellants' complaint first alleges the Attorney General has certain official duties imposed by statute, citing specifically RCW 43.10.030(2)[2] and RCW 43.09.330.[3] They then allege that

[2] "The attorney general shall:

"...

"(2) Institute and prosecute all actions and proceedings for, or for the use of the state, which may be necessary in the execution of the duties of any state officer;" RCW 43.10.030(2).

[3] "The state auditor, the chief examiner, and every state examiner of the division of departmental audits, for the purpose of making post–audits, may issue

the statutes cited, coupled with the auditor's report as well as the "admission" on the part of the Attorney General that recovery of the funds could be accomplished, create an absolute duty on the part of the Attorney General to recover funds expended under the program. See Appendix.

■ The Attorney General is required by RCW 43.09.330 to bring an action based upon an auditor's report only if the audit "discloses malfeasance, misfeasance, or nonfeasance in office on the part of any public officer . . ." We have, in this context, defined malfeasance, misfeasance, and nonfeasance in office:

> Misfeasance means the improper doing of an act an officer might lawfully do; or, in other words, it is the performance of a duty in an improper manner. Nonfeasance means the total omission or failure of an officer to enter upon the performance of some distinct duty or undertaking required by his office. Malfeasance has been defined as follows:

---

subpoenas and compulsory process and direct the service thereof by any constable or sheriff to compel the attendance of witnesses and the production of books and papers before him at any designated time and place, and may administer oaths.

"If any person summoned neglects or refuses to appear, or neglects or refuses to answer any question that may be put to him touching any matter under audit, or to produce any books or papers required, the person making such audit shall apply to a superior court judge of the county where the hearing arose to issue a subpoena for the appearance of such person before him; and the judge shall order the issuance of a subpoena for the appearance of such person forthwith before him to give testimony; and if any person so summoned fails to appear, or appearing refuses to testify or to produce any books or papers required, he shall be subject to like proceedings and penalties for contempt as witnesses in the superior court. Wilful false swearing in any such examination shall be perjury and punishable as such.

"If any audit discloses malfeasance, misfeasance, or nonfeasance in office on the part of any public officer or employee, within thirty days from the receipt of his copy of the report, the attorney general shall institute and prosecute in the proper county, appropriate legal action to carry into effect the findings of such post–audit. It shall be unlawful for any state department or the responsible head thereof, to make a settlement or compromise of any claim arising out of such malfeasance, misfeasance, or nonfeasance, or any action commenced therefor, or for any court to enter upon any compromise or settlement of such action without the written approval and consent of the attorney general and the state auditor." RCW 43.09.330.

"'Evil doing; ill conduct; the commission of some act which is positively unlawful; the doing of an act which is wholly wrongful and unlawful; the doing of an act which the person ought not to do at all; the doing of what one ought not to do; the performance of some act which ought not to be done; the unjust performance of some act which the party had no right, or which he had contracted not, to do.' 38 C.J. 344.

*State v. Miller,* 32 Wn.2d 149, 152, 201 P.2d 136 (1948). The auditor's report in the instant case does not specifically allege any of these activities by a public officer. It refers the matter to the Attorney General for resolution and recommends the initiation of "appropriate" legal proceedings. The duty imposed upon the Attorney General by RCW 43.09.330 is therefore not applicable.

■ The Attorney General is designated by RCW 43.10.030(2) as the legal officer of the state responsible for bringing actions on behalf of state officers, departments or other agencies. *State v. Gattavara,* 182 Wash. 325, 47 P.2d 18 (1935). A similar statute, declaring the Attorney General to be the legal representative of the Industrial Insurance Commission and directing that sums due under the act "'shall be collected by action at law'" was held not to create an absolute duty to institute litigation, but rather a duty to be exercised wholly within the discretion of the Attorney General and the Industrial Insurance Commission. *State ex rel. Rosbach v. Pratt,* 68 Wash. 157, 122 P. 987 (1912). This has been the consistent ruling of courts under statutes vesting power to commence actions or institute proceedings on behalf of the State in the Attorney General. *State ex rel. Peterson v. Fraser,* 191 Minn. 427, 254 N.W. 776 (1934); *State ex rel. Wilson v. Young,* 44 Wyo. 6, 7 P.2d 216, 81 A.L.R. 114 (1932); *Hermann v. Morlidge,* 298 Ky. 632, 183 S.W.2d 807 (1944). This principle applies with equal force to RCW 43.10.030(2).

The "duty" imposed upon the Attorney General here was to "exercise discretion." If in his judgment the proposed litigation was warranted, he could, as the Attorney General,

have attempted to bring such an action. He was not, however, required by law to do so.

Although there was no absolute duty by the Attorney General to bring suit, the complaint cannot be dismissed upon a CR 12(b)(6) motion if it is found to adequately allege a claim based upon some theory other than that advanced by the plaintiffs. *Lester v. Percy,* 58 Wn.2d 501, 364 P.2d 423 (1961). The complaint does not, however, adequately state a claim upon some other theory which has a basis in law.

■ A claim of surety liability can only be based upon an abuse of discretion with which the Attorney General is vested. *See* RCW 42.08.020. To establish this it must be demonstrated the Attorney General's action was somehow arbitrary and capricious, that is, "wilful and unreasoning action, action without consideration and in disregard of the facts and circumstances . . ." *In re Buffelen Lumber & Mfg. Co.,* 32 Wn.2d 205, 209, 201 P.2d 194 (1948). A claim of personal liability here requires a showing that the Attorney General not only made an error or mistake (which in the context of a discretionary function would mean that there was not room for two opinions as to the proper course of action), but that the error or mistake was the product of corrupt or malicious motives. *Whatcom County v. Langlie,* 40 Wn.2d 855, 246 P.2d 836 (1952).

■ Even our liberal rules of pleading require a complaint to contain direct allegations sufficient to give notice to the court and the opponent of the nature of the plaintiff's claim. There must be allegations worded in such a way as to permit the introduction of evidence concerning the propriety of the process by which it was determined not to sue, and which advise the defendant that it is this decision-making process which is to be the action under scrutiny. Absent such allegations, the complaint is properly dismissed. *Lightner v. Balow,* 59 Wn.2d 856, 370 P.2d 982 (1962). Equivalent federal rules are construed similarly by federal courts.

A reading of Garcia, Conley, and a host of other cases suggests that the complaint, and other relief–claiming pleadings need not state with precision all elements that give rise to a legal basis for recovery as long as fair notice of the nature of the action is provided. However, the complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.

(Footnotes omitted.) Wright & Miller, *Federal Practice and Procedure* § 1216, at 120 (1969). This complaint fails to allege facts establishing a claim based upon either a theory of abuse of discretion or a clearly incorrect decision on the part of the Attorney General.

■ Appellants allege the respondent has admitted he could recover these funds and thus his failure so to do constitutes acquiescence in an illegal gift of public funds. In considering a CR 12(b)(6) motion, this court may take judicial notice of matters of public record. *Iacaponi v. New Amsterdam Cas. Co.,* 279 F.2d 311 (3d Cir. 1967), *cert. denied,* 389 U.S. 1054, 19 L. Ed. 2d 849, 88 S. Ct. 802 (1968); *Hagan v. California,* 265 F. Supp. 174 (C.D. Cal. 1967); *see Federal Practice and Procedure, supra* at § 1357. Respondents argue, and we agree, that the purported "admission" has no relation to the recovery of the funds here in question. The statement was made in the course of oral argument before this court in *Weiss* and pertained to the recovery of funds expended after the challenge to the appropriation had been initiated, and not to the funds here at issue. The reference to an admission is incorrect and its truth need not be assumed in evaluating the sufficiency of this complaint. *See Brown v. MacPherson's, Inc.,* 86 Wn.2d 293, 545 P.2d 13 (1975). The complaint does contain a conclusory allegation to the effect that the Attorney General declined to sue to serve his own "private interest or personal political ambitions." However, the complaint contains no allegation which approaches the statement of a claim

based upon a theory that the decision not to sue was clearly incorrect or constituted an abuse of discretion. There is no allegation that such a suit would have been successful as a matter of law, or had even a likelihood of success, other than the purported admission by the Attorney General previously discussed.

The complaint also fails to allege that commencement of legal proceedings would result in a net monetary gain to the State or that any judgment obtained could be satisfied. On the basis of the admitted facts before us, it may have proven necessary to institute suits for $100 against each of the over 8,000 students involved in order to recover these funds. The Attorney General may take such problems into account in exercising his discretion.

A letter from the Attorney General is quoted in the complaint without comment or challenge. That letter indicates due consideration was given to the commencement of litigation. There is no allegation that the Attorney General refused to consider bringing a suit.

Where we have recently held a complaint to be sufficient to withstand a motion to dismiss, the complaint called into question contained far more in the way of material allegations supportive of a valid legal claim than are present in the pleading presently before us. *See, e.g., Brown v. MacPherson's, Inc., supra; Hofto v. Blumer,* 74 Wn.2d 321, 444 P.2d 657 (1968); *Barnum v. State,* 72 Wn.2d 928, 435 P.2d 678 (1967); *Higgins v. State,* 70 Wn.2d 323, 422 P.2d 836 (1967).

Affirmed.

STAFFORD, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.

## APPENDIX

7. *Defendant Gorton's Failure To Perform Official Duties:* The defendant Slade Gorton has failed and refused to perform his duties as attorney general as required by statute and as contemplated by the condition in his official bond. His willful refusals or failures to perform his

duties and to represent the interests of the state of Washington constitute official misconduct and neglect of duty as contemplated by RCW 42.08.020, wrongful acts and defaults as contemplated by RCW 42.08.080 and professional malpractice to the damage and detriment of the taxpayers of the state of Washington. The details of his refusals or failures to act on behalf of the state of Washington are detailed as follows:

The defendant Gorton has long sided with private school forces in efforts to obtain for them public funds notwithstanding clear constitutional prohibitions.

In 1971, with encouragement of defendant Gorton, the legislature enacted Chapter 56, Laws of 1971, First Extraordinary Session, to provide tuition grants to students of private colleges and universities in the state of Washington. The legislature also appropriated $1,700,000.00 to fund the program for the next biennium. In approximately November 1971, the state paid $845,455.00 directly to 10 private colleges and universities in the state. In 1972, private taxpayers asked defendant Gorton as attorney general to challenge the constitutionality of the program. He refused, saying "We not only will not file an action challenging the same but will vigorously defend its constitutionality." The private citizens and taxpayers thereupon brought their own suit in the state Supreme Court in a case entitled *Weiss v. O'Brien,* Supreme Court cause No. 42571. When the case was filed, the remainder of the appropriation (approximately $850,000.00) was scheduled to be disbursed in about two months. The private citizen plaintiffs asked the court to stay any further disbursement of these state funds pending a decision on the merits. The court was asked to do so to avoid the mess and embarrassment which would result if the state paid out public funds in November only to be told a few months later that the payments were illegal—that it should not have made them. Defendant Gorton objected to any stay order and insisted that the state be permitted to make immediate payment. In oral arguments on a motion for a stay order, Justice Rosellini asked deputy attorney general Malachy R. Murphy what the attorney general would do if the money were disbursed and the attorney general later lost the case. Mr. Murphy answered that the attorney general has no difficulty in collecting funds and assured the court that the attorney general's office would recapture any payments which might be held to have been made illegally. The verbatim text of that dialogue as recorded by the Supreme Court, is set forth as follows:

Justice Rosellini—". . . I never saw a lawsuit that's open and shut. Suppose you lose this lawsuit, how're you going to recover the money?"

Dpty. Atty. Gen. Malachy Murphy—"I don't think that's a practical problem, Justice Rosellini. The Attorney General's Office, as well as other state agencies, collect(s) funds all the time. We collect funds under the welfare program. We collect, uh, the assistants representing

the University of Washington, for example, go out and try to collect defaulting National Education Act loans. As a matter of course, this is one of the things the Attorney General's Office spends its time doing. We have experience in doing that, in recovering these funds in the event that becomes a necessity. We don't think it presents a practical problem. I don't think, uh, to the extent that it presents any problem at all, I don't think it's sufficient enough to warrant this Court granting a stay under the circumstances here, under the very weak showing that Mr. Blankinship has made today."

The court stayed disbursements scheduled for November 1972 and the following May unanimously held the entire program, including the statute and the appropriation unconstitutional. All further payments were permanently prohibited.

After the court's decision in *Weiss v. O'Brien*, 82 Wn.2d 199, defendant Gorton was asked to recover for the state the $845,455.00 disbursed directly to the colleges and universities in November 1971. He refused by letter dated August 31, 1973, a copy of which is set forth as follows:

August 31, 1973

Mr. John D. Blankinship
Attorney at Law
1515 Norton Building
Seattle, Washington 98104

Dear John:

Slade has asked me to respond to your letter of July 27, 1973.

In answer to your first question which deals with what position this office has taken with respect to Chapter 81 of the Laws of 1973 in view of the Supreme Court's decision in *Weiss v. Bruno and O'Brien*, I'm enclosing a copy of AGLO 1973 No. 60, dated May 31, 1973 and addressed to The Honorable Frank B. Brouillet. That letter is self-explanatory and I trust adequately answers your inquiry.

Your second question asks whether we propose to recapture for the State of Washington the $845,455 dispersed under the college tuition supplement program prior to its challenge. We do not.

You cite *State v. Continental Baking Co.*, 72 Wn.2d 138 for the rule that a payment made by the State under a mistake of law is recoverable. I do not read that case to announce that rule, and in fact, I do not believe that issue was even present before the court. Secondly, you indicate in your letter that I reassured the court in response to a question from Justice Rosellini that if we lost the case on the merits we would have no difficulty in recapturing the payments. While I have not reviewed the recording of oral argument before the court last October 25, as you apparently have, it is my recollection that I told the court that this office has had much experience in collecting debts owed

to the State of Washington, and that *if we were required to* we would have no difficulty, from an administrative standpoint. I at no time indicated to the court, as you know, that this office had any intention of seeking to recover money dispersed to qualified students under the tuition supplement program the previous year, at a time when the statute involved was presumed constitutional and before your clients or anyone else saw fit to challenge that statute. Our position in that regard remains unchanged. We have no intention of attempting to recover any of the $845,455 dispersed under the tuition supplement program in the first academic year of the program's existence.

I trust the above adequately responds to your two inquiries. If you have any other questions with regard to this matter, please don't hesitate to get in touch with us at any time.

With best personal regards.

Yours very truly,

FOR THE ATTORNEY GENERAL

MALACHY R. MURPHY
Deputy Attorney General

MRM:mg
cc: Slade Gorton
    Richard Montecucco

In June 1974, in a report on the audit of the Council on Higher Education, the state auditor said:

"The State Supreme Court's ruling [in Weiss v. O'Brien] although made after–the–fact, raises the question of possible recovery of these expenditures. *We therefore refer this matter to the Attorney General for resolution.* Moreover, *we recommend* that the Attorney General institute appropriate legal action to recover these expenditures subject, of course, to the resolution of the matter."

Defendant Gorton has taken no action to perform on the Auditor's findings and recommendations (nor on his assurance to the Supreme Court) that the illegal disbursements be recovered for the state.

8. Since the defendant Gorton admits that he could, if he wished, readily recover for the state the funds illegally disbursed, his refusal to do so constitutes acquiescence in an illegal gift of public funds which serves the private interests or personal political ambitions of the defendant Gorton to the loss and detriment of the interests of the state of Washington. His refusal to perform his official duties constitutes official misconduct and neglect of duty as contemplated by RCW 32.08.020, wrongful acts and defaults as contemplated by RCW 42.08.080 and professional malpractice to the damage and detriment of the state of Washington and its citizens and taxpayers.

HAMILTON, J. (dissenting)—I dissent, for I believe the majority's opinion does little more than pay quaint homage to the rules which govern our review of a motion to dismiss for failure to state a claim.

## I

The rules are quite simple. A complaint can be dismissed under CR 12(b)(6) only if it is clear beyond a doubt that the plaintiff can prove no set of facts which would entitle him to relief. For the purposes of testing the sufficiency of the complaint, the factual allegations contained in the complaint must be accepted as true. *Barnum v. State,* 72 Wn.2d 928, 435 P.2d 678 (1967); *Higgins v. State,* 70 Wn.2d 323, 422 P.2d 836 (1967); *Sherwood v. Moxee School Dist. 90,* 58 Wn.2d 351, 363 P.2d 138 (1961). The majority goes beyond accepting the factual contentions of the complaint as true and proceeds to make its own findings in contradiction to the rule above stated. This establishes a precedent with which I cannot agree.

It must be emphasized that the only pleadings before us consist of the complaint and the motion to dismiss. The following allegations are contained in appellants' complaint:

The defendant Gorton has long sided with private school forces in efforts to obtain for them public funds notwithstanding clear constitutional prohibitions.

In 1971, with encouragement of defendant Gorton, the legislature enacted Chapter 56, Laws of 1971, First Extraordinary Session, to provide tuition grants to students of private colleges and universities in the state of Washington. . . . In 1972, private taxpayers asked defendant Gorton as attorney general to challenge the constitutionality of the program. He refused, saying "We not only will not file an action challenging the same but will vigorously defend it constitutionality." . . .

. . .

. . . [H]is refusal to [recover for the state the funds illegally disbursed] constitutes acquiescence in an illegal gift of public funds which *serves the private interests or personal political ambitions of the defendant Gorton to*

*the loss and detriment of the interests of the state of Washington.*

(Italics mine.)

The majority admits that public officers may be personally liable for errors or mistakes in exercising a discretionary function when those errors or mistakes are the product of corrupt or malicious motives. It is hard for me to conceive of stronger allegations of questionable motives than those found in the appellants' complaint. It has been quite clear in this state for many years that legislation which financially benefits any sectarian school, whether directly or indirectly, and no matter how minimal, is unconstitutional under Const. art. 9, § 4. *See Weiss v. Bruno,* 82 Wn.2d 199, 509 P.2d 973 (1973); *Visser v. Nooksack Valley School Dist. 506,* 33 Wn.2d 699, 207 P.2d 198 (1949); *Mitchell v. Consolidated School Dist. 201,* 17 Wn.2d 61, 135 P.2d 79, 146 A.L.R. 612 (1943); *State ex rel. Dearle v. Frazier,* 102 Wash. 369, 173 P. 35 (1918); Attorney General Opinion, September 19, 1891. Appellants have alleged that the respondent actively sought passage of a patently unconstitutional measure and then arbitrarily refused to collect the funds disbursed under this measure.[4] To my way of thinking, these allegations state a claim for individual liability of a public officer. *See Whatcom County v. Langlie,* 40 Wn.2d 855, 859, 246 P.2d 836 (1952).

The majority dismisses this claim by saying that "[t]here is no allegation that such a suit would have been successful

[4]One author has described the various ploys indulged in to obtain public funds for sectarian school purposes after the United States Supreme Court handed down its decision in *Lemon v. Kurtzman,* 403 U.S. 602, 29 L. Ed. 2d 745, 91 S. Ct. 2105 (1971), as follows:

A game plan emerged. Pass a law providing aid to parochial schools and start paying immediately or as quickly as possible. Continue paying until the Supreme Court finally declares the law unconstitutional. It may take a year or more before a suit is started to challenge the law, and perhaps another two years until the case gets to the Supreme Court. In the meantime, keep paying. When the law is finally struck down by the Supreme Court, rush some variation through the legislature and start over again. This pattern was followed in New York, Pennsylvania, Ohio, and Connecticut, among others.

L. Pfeffer, *God, Caesar, and the Constitution* 282 (1975).

as a matter of law, or had even a likelihood of success, . . ." Never before has this court required litigants to allege that their suit will be successful. To make such a requirement is tantamount to forcing a plaintiff to predict the outcome of his lawsuit in order to avoid a motion to dismiss.

What the majority is actually saying is that it does not believe appellants will be able to successfully prove the allegations in their complaint. The majority has already tested the truthfulness of these allegations and found them wanting, without the benefit of a fact–finding proceeding. This is not our function. *See Barnum v. State, supra.* Our function is to review the complaint and determine if it states a claim for which relief could be granted. It goes without saying that in order for us to determine if it states such a claim, we must accept the allegations in the complaint as being true. Parties should be allowed to have the truthfulness of their allegations tested by a trial court in a fact–finding proceeding. The majority has cut off appellants' right to employ all of the discovery devices allowed under our rules and to present their evidence to the trial court. The majority thus forces the appellants to try their case on the complaint standing alone. I cannot agree with this treatment of the case and the precedent it creates for future cases.

## II

The majority, in essence, rests its result upon the assertion that the commencement of a suit to collect unconstitutionally disbursed funds is wholly discretionary with the Attorney General. If this be so, it appears to me that the allegations of the complaint are broad enough to sustain a finding of an abuse of discretion if those allegations should be established as true.

As we pointed out in *Weiss v. Bruno, supra,* Const. art. 9, § 4, is crystal clear. It provides:

All schools maintained or supported wholly or in part by the public funds shall be forever free from sectarian control or influence.

Not only does the constitutional provision speak for itself, but, as heretofore indicated, it has been consistently construed by this court in varying circumstances as prohibiting exactly what it and Const. art. 1, § 11,[5] intend to prohibit. *Visser v. Nooksack Valley School Dist. 506, supra; Mitchell v. Consolidated School Dist. 201, supra; State ex rel. Dearle v. Frazier, supra.*

Against this background, it could well strain credulity that the Attorney General would not recognize that Laws of 1971, 1st Ex. Sess., ch. 56, appropriating the funds in question, was at the very minimum fraught with grave constitutional inhibitions. Appellants allege, however, that rather than institute a test case to ascertain the constitutionality of the legislative enactment, the Attorney General stood aloof and casually watched as the funds were unconstitutionally disbursed.

The Attorney General would, as I understand his contentions, seek to justify the alleged nonaction upon the ground that it is the Attorney General's duty to uphold legislation rather than question an enactment's constitutionality, regardless of the patency of the enactment's invalidity. Thus, where the legislation in question appropriated funds for unconstitutional purposes, a trial court could conclude that the Attorney General played the game alluded to in footnote 4. If this be so, I cannot believe that such is an appropriate function of the Attorney General in our scheme of government.

On the contrary, this court stated, albeit in a different context, in *State ex rel. Dunbar v. State Bd. of Equalization,* 140 Wash. 433, 440, 249 P. 996 (1926):

> (e) Contention is made that the *Attorney General* is compelled, under the constitution and statutes, to represent state officers, and that therefore he can not begin an action wherein state officers are defendants. Attention is called to Rem. Comp. Stat., § 112, subd. 3, where it is

---

[5]Const. art. 1, § 11 provides, in pertinent part, that: "No public money or property shall be appropriated for or applied to any religious worship, exercise or instruction, or the support of any religious establishment: . . ."

made the duty of the *Attorney General* to defend all actions against any state officer. The legitimate conclusion of such an argument is that the *Attorney General* must, if such a situation arise, sit supinely by and allow state officers to violate their duties and be recreant to their trusts, and that instead of preventing such actions it is his duty to defend the delinquents. The law can not be given any such construction. His paramount duty is made the protection of the interest of the people of the state and, where he is cognizant of violations of the constitution or the statutes by a state officer, his duty is to obstruct and not to assist; . . .

In my opinion, the Attorney General has an analogous role and duty with respect to patently unconstitutional appropriations.

If it be established at trial that the Attorney General deliberately failed to pursue his obligations at the outset, it could well be concluded that the duty rested twofold upon the shoulders of the Attorney General to have subsequently undertaken recovery of the unconstitutionally disbursed funds. And, in this respect, it would appear to be a bright crimson herring to assert that to carry out that duty would require the pursuit of some 8,500 students for $100 apiece. As pointed out in *Weiss v. Bruno, supra,* the funds were disbursed to the colleges and universities involved, some 10 in number, and not to the students.

In conclusion, it is my view that if appellants' allegations, that the Attorney General deliberately, and without justification, refused to seek recovery of the unconstitutionally disbursed funds, be established, then a trial court could conclude that such refusal constituted such arbitrary and capricious action as would justify a recovery on appellants' claim.

Being of the view that appellants' allegations are sufficient to carry their claim for relief past a motion to dismiss,

I would accordingly reverse the dismissal.

WRIGHT, C.J., and ROSELLINI, J., concur with HAMILTON, J.